435 P.2d 42

**Lawrence C. DUNAGAN, Appellant,**

v.

**STAGGS–BILT HOMES, INC., an Arizona corporation, Appellee.**

**No. 8459.**

Supreme Court of Arizona,
In Banc.
Dec. 20, 1967.

Dean Scott, Phoenix, for appellant.

Shimmel, Hill, Kleindienst & Bishop, by James B. Rolle, III, Phoenix, for appellee.

LOCKWOOD, Justice:

Staggs-Bilt Homes, Inc., plaintiff-appellee, brought an action against Lawrence C. Dunagan, defendant-appellant, to recover damages for an alleged breach of contract. The case was tried without a jury and the trial court entered judgment in favor of the plaintiff in the amount of $2,100.94. Dunagan appeals, contending that (1) the plaintiff presented no competent evidence to show breach of contract, damages, defective workmanship, precise place of breach, that the contract related to the homes in question, and that monies paid to a third party were for correcting the defective work of the defendant; (2) that certain exhibits admitted in evidence were not submitted for inspection as required by the pretrial order; (3) that the offered and admitted exhibits were hearsay and not within the business records exception to the hearsay rule.

We will not discuss all the issues presented since we hold that there was not sufficient evidence to establish a breach of contract.

Dunagan and Staggs-Bilt Homes, Inc., entered into a subcontract whereby Dunagan was to "furnish all labor and material for installation of ceramic tile, mud installed, according to plans [sic] specifications * * *" for kitchens and bathrooms on certain type houses being constructed by Staggs-Bilt Homes. The contract referred to plan numbers, (e. g. Plan S–99, Plan 56–100), but failed to state where the planned styles were located, what lot numbers they were to be built upon, what street addresses they would have, or even how many homes this involved.

Dunagan apparently only worked for the plaintiff "a period of time". Approximately six months after the defendant had completed his work, plaintiff began receiving complaints from various homeowners regarding the ceramic tile in some of the homes in the tract. One of the agents of the plaintiff contacted the defendant and together they inspected "five or six" of these homes. The ceramic tile in these homes was damaged, chipped and cracking, but the defendant attributed this to wear and tear and not to poor workmanship. After the defendant refused to replace the tile at his own expense, the plaintiff hired a third party to handle similar complaints at the cost of $2,100.94.

At the trial, the defendant testified to the condition of the ceramic tile in the "five or six" homes he inspected. Plaintiff's counsel objected, pointing out that defendant's testimony concerned five or six homes which may or may not have been any of the homes which plaintiff alleged in his complaint were not properly completed by defendant. However, no where in the complaint was any particular house or lot described which

could be identified in the testimony. The plaintiff did not present any testimony which would indicate with any certainty in which house or houses the defendant made the installation of ceramic tile which was later complained of by homeowners.

The only testimony presented by the plaintiff consisted of two witnesses: plaintiff's planning director and plaintiff's comptroller. The planning director testified that he had inspected "six or eight lots" in which he personally observed defective workmanship in ceramic tile. However, he was unable to state *which* lots he examined. The plaintiff's comptroller testified that he was not even employed at the time the defendant performed the contract in question and further admitted that he had no personal knowledge whatever of any defective work. Neither of the witnesses directly connected the defendant with the defective work in question.

█ The only documents in evidence tending to connect the defendant with any of the homes in which there was defective tile were the various typed interoffice memos relative to homeowner's complaints, prepared by plaintiff's employees. Some of the memos had defendant's name inserted near the top, from which plaintiff apparently inferred that defendant was the subcontractor responsible for that particular home. Almost all these memos were addressed to "Bonnie". Nine of them were signed by "Geo.". Neither of these individuals testified. The balance of the memos were not signed at all. Assuming ,but not deciding that the memos were properly admitted in evidence, (in spite of failure of plaintiff to permit prior inspection thereof by defendants pursuant to a pretrial order), they did not establish that defendant was responsible for the tile work mentioned in the complaints.

█ The plaintiff had the burden of proving the defendant guilty of a breach of contract in order to establish a prima facie case. Clark v. Compania Ganadera de Cananea, S.A., 95 Ariz. 90, 94, 387 P.2d 235, 238 (1963). To carry his burden plaintiff had to at least demonstrate that the homes in which the ceramic tile was poorly installed were the identical homes in which the defendant installed the tile. Plaintiff clearly failed to carry his burden in this respect. The decision of the lower court finding the defendant liable for the breach complained of had to be based upon the assumption that Dunagan performed the original tile work in the homes improperly completed. This assumption was not supported by the evidence.

Judgment reversed.

BERNSTEIN, C. J., McFARLAND, V. C. J., and STRUCKMEYER and UDALL, JJ., concur.