476 P.2d 864

**HAWKINSON TIRE COMPANY of Arizona, an Arizona corporation, Appellant,**

v.

**PAUL E. HAWKINSON COMPANY, a Minnesota corporation, Appellee.**

**No. 1 CA–CIV 1264.**

Court of Appeals of Arizona,
Division 1.

Nov. 19, 1970.

Rehearing Denied Dec. 21, 1970.

Review Granted Feb. 2, 1971.

**344**

Marks & Marks, by Philip J. Shea, Phoenix, for appellant.

Snell & Wilmer, by George C. Wallach, Phoenix, for appellee.

HOWARD, Chief Judge.

The appellee, plaintiff below, filed suit against the appellant, defendant below, seeking to recover certain personal property and damages by virtue of the defendant's alleged breach of contract. (We shall hereinafter refer to the parties as they appeared below.) The defendant filed a counterclaim seeking damages for plaintiff's alleged breach of contract. Plaintiff moved for judgment on the pleadings with respect to the counterclaim on the ground that it was barred by the statute of limitations. The motion was granted and judgment entered accordingly.

Plaintiff's claim was tried to the court sitting without a jury and judgment was entered decreeing that plaintiff was entitled to possession of certain personal property and defendant was ordered to ship it forth-

with to the plaintiff's place of business in Minneapolis, Minnesota.[1]

### DID THE TRIAL COURT ERR AS TO THE COUNTERCLAIM?

■ The essence of defendant's counterclaim was, as alleged in its pleading, that in April, 1959, the plaintiff breached the license agreement between the parties[2] by granting another license to defendant's competitor in Phoenix, Arizona. The pleading alleges one breach, to-wit in 1959, but the counterclaim was not filed until 1966, more than six years after the alleged breach. Assuming arguendo that the six-year limitations period prescribed in A.R.S. § 12–548 applies rather than the four-year period of A.R.S. § 12–550, the defendant's counterclaim was barred since the statute of limitations commenced to run in 1959, the date of the breach. Waddell v. White, 51 Ariz. 526, 78 P.2d 490 (1938); Hollin v. Libby, McNeill and Libby, Or., 452 P.2d 555 (1969); 51 Am.Jur.2d Limitation of Actions § 126; 54 C.J.S. Limitation of Actions § 125 (a).

■ Defendant contends, however, that even if the statute commenced to run in 1959, it was tolled pursuant to A.R.S. § 12–501 because plaintiff was absent from the state "in that it was a foreign corporation without a license to do business here." For a foreign corporation to be "absent" within the meaning of A.R.S. § 12–501, it must be out of the state in the sense that it could not be served with process. Phillips v. Anchor Hocking Glass Corporation, 100 Ariz. 251, 413 P.2d 732 (1966). Defendant argues that since plaintiff could not be served within the borders of Arizona, no *in personam* jurisdiction could have been acquired over it. This argument is clearly without merit as service of process could have been effected by constructive service. D. W. Onan & Sons v. Superior Court, 65 Ariz. 255, 179 P.2d 243 (1947); see Rule 4(e) (1), Rules of Civil Procedure, 16 A.R.S.

1. The plaintiff abandoned its claim for damages.

2. This written license agreement formed the basis of the plaintiff's claim.

Since the limitations bar was manifested on the face of defendant's pleading, the trial court did not err in its summary disposition of the counterclaim.

## DID THE TRIAL COURT ERR IN GRANTING JUDGMENT TO THE PLAINTIFF?

The plaintiff's amended complaint alleged that: On April 30, 1938 plaintiff entered into a license agreement with certain individuals, a copy of which agreement was attached thereto; on July 7, 1943, the licensees' interest in the agreement was assigned to defendant; plaintiff had furnished certain equipment to defendant, as described in an attached exhibit, which was covered by the terms of the lease; defendant had failed to comply with the terms of the agreement and had refused to so comply; on September 18, 1964, written notice had been given to defendant that the license agreement would be terminated at the expiration of 30 days; and after the expiration of said 30 days, plaintiff demanded the return of its equipment as set forth in the license agreement but defendant failed and refused to deliver possession of the equipment.

In its answer, defendant admitted execution of the license agreement and the assignment thereof to it and that plaintiff had given notice of cancellation and had demanded return of the equipment. As to plaintiff's allegation of noncompliance by defendant with the terms of the license agreement, defendant responded:

"In answer to paragraph V of the Amended Complaint, defendant admits that it has failed to comply with all the terms of the license agreement since December 31, 1960, but alleges:

(1) that said agreement expired and became of no further force and effect on December 30, 1953;

(2) that said agreement is and at all times material hereto has been illegal under the laws of the United States."

Pertinent portions of the license agreement which form the basis of plaintiff's claim are:

"THIS AGREEMENT IN WRITING made and entered into this 30th day of April, 1938, by and between Paul E. Hawkinson Company, a Minnesota corporation, * * * hereinafter referred to as 'Licensor,' and [defendant's assignor] hereinafter referred to as 'Licensee';

WITNESSETH THAT:

WHEREAS, Licensor is assignee and owner of the entire right, title and interest, legal and equitable, in and to those certain inventions of Paul E. Hawkinson relating to the method of an apparatus for treading tire casings, and disclosed and claimed in Letters Patent of the United States, to-wit: Numbers 1,917, 261–1, 917, 262–2, 034, 618–2, 065, 697; and

WHEREAS, Licensee is desirous of acquiring an exclusive right to practice the Hawkinson method and to use the Hawkinson apparatus within a limited territory hereinafter defined.

NOW THEREFORE, In consideration of the premises and the mutual covenants and agreements hereinafter set forth, the parties have agreed and do hereby agree as follows:

1. The Licensor hereby grants to the Licensee subject to conditions and for considerations hereinafter further expressed, the exclusive right and license to practice the Hawkinson method and to use the Hawkinson apparatus disclosed and claimed in said Hawkinson applications above identified, within the following territory, to-wit: All of Gila, Yavapai, Then the North half of Pinal Counties and all of Maricopa County, Arizona. but at no place outside of said territory; and which right or license, unless revoked for cause or as hereinafter provided shall extend throughout the life of Letters Patent issued on said applications or either thereof or the invention

therein disclosed, and which Letters Patent is the last to expire.

2. The considerations moving from Licensee to Licensor for the grant made under Section I, shall consist of and be divided into three parts, to-wit:

(a) A cash consideration;

(b) Deferred monthly rental payments; and

(c) The purchase of rubber from Licensor or a royalty based on the quantity of rubber employed in practicing the same Hawkinson method and/or use of said Hawkinson apparatus, all as hereinafter more fully explained.

3. The Licensor agrees to furnish the Licensee, for initial delivery, the following equipment for use by Licensee in the practice of the herein license method (such equipment to remain the property of Licensor), in accordance with the following itemized list which expresses the above considerations (a) and (b), and in accordance with consideration (c) which will later be more fully defined.

[list of equipment]

In accordance with the above itemized list, the total cash consideration (a) will amount to $1,173.00 and the total rent per month (b) for the equipment will amount to $8.25.

\* \* \* \* \* \*

15. In case Licensee fails to do any of the things herein agreed to be done, then Licensor may revoke the license herein given and terminate this contract by first serving notice upon Licensee specifying the thing or things in default and requesting that they be performed or made good within thirty (30) days from date of such written notice; and thereupon, if the said thing in default be not performed or made good within thirty (30) days, then, at the termination of said thirty (30) days, the license herein given shall be ipso facto revoked and this contract terminated; but such termination, however, shall not relieve the Licensee from his or its obligation to pay to Licensor any and all money that may be due at the date of such termination.

16. Licensee agrees that upon revocation of the license herein given, for cause or for any of the reasons above specified or for other cause, he or it will forthwith deliver to Licensor in good condition, F.O.B. Minneapolis, all equipment furnished him or it by Licensor."

The agreement also contained provisions relative to the purchase of rubber and the royalty to be paid to the licensor based on the quantity of rubber used by the licensee in practicing the Hawkinson method. The licensee was not required to purchase all its rubber needs from the licensor—it was given the option of purchasing from a company other than the licensor, provided its rubber was at least equal in quality to specifications furnished to it and provided it agreed to collect from licensee and remit to licensor the specified royalty per pound of rubber. The licensee agreed to either purchase or pay royalties upon a designated number of pounds of rubber during the life of the contract.

As to additional equipment, the agreement provided:

"6. Licensor agrees to furnish licensee with additional equipment of the kind listed in above paragraph 3, or with any other equipment that it may hereinafter manufacture or produce for carrying out the Hawkinson method on terms to be hereinafter promulgated from time to time by Licensor and which shall be as nearly consistent as practical with the terms of the above list, having regard to varying sizes and possible increase in cost of production.

7. Licensee agrees to take reasonable care of any equipment by him or it leased from Licensor now or at any future time; to pay for such repairs and for such replacement beyond that occasioned by usual wear or tear; \* \* \*."

On appeal, defendant complains that there was no evidence presented by

plaintiff of a breach of the license agreement. It is true that a plaintiff has the burden of proving the defendant guilty of a breach of contract in order to establish a prima facie case. Dunagan v. Staggs-Bilt Homes, Inc., 102 Ariz. 568, 435 P.2d 42 (1967). Here, however, defendant in its responsive pleading admitted its failure to comply with the conditions of the license agreement. Under these circumstances, defendant's admission of a breach obviated the need for proof thereof. See Standage v. Tarpey, 8 Ariz.App. 342, 446 P.2d 246 (1968); Schwartz v. Schwerin, 85 Ariz. 242, 336 P.2d 144 (1959). Therefore, defendant's claim that plaintiff failed to sustain its burden of proving a breach is without merit.

■■■ We likewise summarily reject defendant's claim that the license agreement was no longer operative by virtue of the fact that the underlying patents had expired. Although it would appear that the patents enumerated in the 1938 agreement would have expired no later than 1955,[3] defendant's president, Mr. Anderson, testified that the license agreement was in full force and effect at the time plaintiff elected to cancel it. Defendant is therefore estopped to assert a contrary position. Martin v. Wood, 71 Ariz. 457, 229 P.2d 710 (1951); Otis Elevator Company v. Valley National Bank, 8 Ariz.App. 497, 447 P.2d 879 (1968), special concurring opinion.

■■■ Defendant further contends that the license agreement is illegal on its face as being in restraint of trade. It cites numerous cases to support its argument that a patentee, by virtue of its patent monopoly, may not restrain trade in unpatented products. E. g. United States v. Loew's, Inc., 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962); International Salt Company v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947); International Business Machines Corporation v. United States, 298 U.S. 131, 56 S.Ct. 701, 80 L.Ed. 1085 (1936). We are unable to construe the subject license agreement in the fashion contended by defendant. There is no "tie-in" arrangement restricting the purchase of rubber and thereby restraining trade in the unpatented rubber market. Defendant was not required to purchase rubber from plaintiff or its agents under the license agreement. It was free to purchase from any rubber source whatsoever provided only that the rubber conform to certain standards and that the rubber supplier agree to collect and remit the royalty to which plaintiff was entitled under the license agreement.

Defendant argues it had a valid defense in that it was discharged from any obligation under the contract by virtue of plaintiff's material breach thereof. We have no quarrel with the principle of law espoused by defendant, but must reject its contention. If, as it maintained in the trial court and also here on appeal, plaintiff breached the "exclusivity" provision of the license agreement by granting the same right to another, defendant failed to establish that plaintiff did in fact grant the right to another. Defendant having failed to establish a material breach by plaintiff, the postulated defense likewise fails.

■■■ The scope of the trial court's order with regard to the property to be delivered to plaintiff is challenged by defendant on the grounds that it includes property belonging to one Thomas Anderson who was not a party to the proceedings below. Assuming arguendo defendant is correct, its very disclaimer of ownership deprives it of the requisite appealable interest in that portion of the judgment as it cannot be "aggrieved" thereby. Aegerter v. Duncan, 7 Ariz.App. 239, 437 P.2d 991 (1968).

Judgment affirmed.

HATHAWAY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

---

3. 35 U.S.C.A. § 154 provides for a seventeen-year term. The patentee's rights become public property after the expiration of this term. Brulotte v. Thys Company, 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964).