**Wood Leonard SHOLLY et ux., Plaintiff-Appellee,**

v.

**Larry K. ANNAN, James H. Clark, et al., Defendants-Appellants.**

No. 26208.

United States Court of Appeals, Ninth Circuit.

Oct. 11, 1971.

James F. Henderson (argued), of Gust, Rosenfeld & Divelbess, Phoenix, Ariz., for defendants-appellants.

Nasib Karam (argued), of Karam & Martin, Nogales, Ariz., for plaintiff-appellee.

Before CARTER, TRASK and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Larry K. Annan and his employers,[1] citizens of Utah, appeal a judgment after a trial without a jury holding them liable for negligent injury inflicted upon Wood L. Sholly, a citizen of Arizona in a highway accident. We affirm.

Sholly's original negligence complaint was filed in the Arizona Superior Court, but was removed by the defendants to the federal District Court pursuant to 28 U.S.C. § 1441.

On May 25, 1968, Sholly was driving his pickup truck in a southerly direction on US 89, a two-lane highway, in Arizona near Amado. Annan, concededly within the scope of his employment, was following directly behind in a truck and trailer. The collision occurred as Sholly began a left turn across the northbound lane of traffic in which Annan was driving in order to pass Sholly's pickup on the left.

Appellants claimed below that Sholly had been contributorily negligent in that he had failed to signal his intention to turn left for the one hundred feet required by the Arizona Motor Vehicle Code, Arizona Revised Statutes, § 28–754, but had swerved without signaling in front of Annan's truck as he attempted to pass the decelerating pickup. To rebut this allegation, Sholly introduced the testimony of Keith and Kenneth Beck, who had witnessed the collision. The Becks, while driving northbound on the highway, had passed Sholly's pickup as he was slowing down to make his left-hand turn. Both Becks testified that Sholly had his turn signal on; and Kenneth Beck, the driver, testified that he saw Sholly's signal 300 to 400 feet before he passed the pickup at the point the turnoff road entered US 89.

Sholly then testified on his own behalf and described the accident. During cross-examination, the following exchange occurred.

"Q. During the time that you traveled the last 150 to 200 feet to where you made your turn, what cars did you observe coming towards you?

"A. There was no cars coming towards me but I was watching for them.

"Q. There wasn't any vehicle whatsoever?

"A. I didn't see none."

\* \* \* \* \* \*

"Q. Did you see any traffic coming towards you from Nogales?

"A. No, but I was watching, though, because I had already seen the truck behind, and I figured I had plenty of time to make it before the truck got up there.

"Q. If there had been any traffic coming towards you from Nogales, could you have seen it?

"A. Yes.

---

1. The complaint named as defendants Annan, James H. Clark, James H. Clark & Sons, a corporation, and James H. Clark & Sons, a partnership consisting of James H. and James C. Clark.

"Q. And would you have seen it had there been traffic coming towards you?

"A. If there had been traffic in front of me, yes, I would have seen it.

"Q. And there was no traffic coming towards you?

"A. I didn't see none." Transcript, pages 263–264.

Sholly also admitted that he had an unobstructed view of the road ahead of him for approximately one-half mile. Appellants contended below that according to Sholly's positive testimony, the Becks could not have observed his turn signal. Appellants argued that Sholly was bound by his own testimony and cannot avail himself of the contradictory testimony given by the Becks. The trial judge recognized the discrepancy in the testimony but chose to believe the Becks and entered judgment for Sholly for $54,-909.30.

Appellants assert that Sholly's testimony that there were no vehicles approaching him as he made his turn is binding upon him and totally negates the contradictory testimony given by the Becks. Since the judgment below rests upon belief of the impartial testimony of these two witnesses, Sholly has not proven his case without their testimony; and the judgment should be reversed. We disagree.

There is some confusion in the law as to the binding effect of a party's testimony when it is countered by other evidence. See Annot., 169 A.L.R. 798 (1947) and cases collected therein; and "Evidence—Party's Testimony as Judicial Admission," 5 Western Reserve L.

Rev. 389 (1954). While many jurisdictions give binding force to a party's testimony when it is uncontradicted, the prevailing rule is that "a party is entitled to the benefit of the testimony of other witnesses in contradiction of his own, wherever his own is not of the charter of a judicial admission, and concerns only some evidential or constituent circumstance of his case. This is especially so as to the circumstances of an accident or similar event, because in such a case the party's testimony is especially subject to inexactness of observation and memory." Annot., supra, at 809. This rule has considerable scholarly support. 9 Wigmore, Evidence § 2594a (3rd ed. 1940); McCormick, Evidence § 243 (1954).

■■ Arizona [2] has not made a clear pronouncement on this evidentiary problem. Arizona does give binding force to a party's testimony when there is no contradictory evidence on the record. In re Estate & Guardianship of Purton, 7 Ariz.App. 526, 441 P.2d 561 (1968). Similarly, a party is estopped to contradict a position he advocated in a prior judicial proceeding, Martin v. Wood, 71 Ariz. 457, 229 P.2d 710 (1951), or in prior pleadings, Adams v. Bear, 87 Ariz. 288, 350 P.2d 751 (1960). In these situations the party himself is in the best position to know the truth of his own assertions. Purton, supra, citing Wigmore, who decisively rejects the binding effect of a party's testimony.[3] We conclude that although this issue has not yet been decided by its courts,[4] Arizona would not give binding effect to Sholly's testimony.

2. We may assume, arguendo, that in this diversity case Arizona law is controlling.

3. The rule giving binding effect to a party's testimony " * * * assimilates testimony on the stand to formal deliberate admissions. But testimony cannot be treated that way. Testimony in court is an elusive matter of mental operations. It is the culmination of much talk and reflection and memory-stirring between all concerned. It is full of surprises. * * * The truth of the case depends on a com-

parison of what all the witnesses say and all the circumstances indicate." Wigmore, supra, at 60.

4. The federal courts are, of course, obligated by Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to decide issues of state law in diversity cases when there are no state decisions directly in point. Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); Stimson v. Tarrant, 132 F.2d 363, 364 (9th Cir. 1943).

First, it is clear from the impartial testimony of the Beck brothers that Sholly was simply mistaken when he testified that there were no oncoming cars. He may have misunderstood the question because, in fact, the Beck jeep had already passed him when he began his turn. There actually were no oncoming vehicles when he made his turn. There is no reason to bind a party to a statement made on the persistent prompting of opposing counsel where he was merely an observer of an objective occurrence, when, as here, he could have been honestly mistaken, and as the objective evidence clearly indicates he was mistaken.

Second, the testimony which appellants seek to make binding on Sholly is not central either to his negligence claim that Annan was following too close behind him at too high a speed or to appellant's contributory negligence allegation that Sholly did not signal his intention to turn. Liability does not hinge upon the presence of on-coming traffic or on whether or not Sholly saw it. All the Arizona cases giving binding effect to a party's testimony, whether contradicted or uncontradicted by other evidence, deal with facts which are central to the controversy.[5] Whether or not Sholly saw on-coming vehicles is peripheral to the tort issues in this case. A party should not be bound by his testimony on a peripheral fact question which does not affect liability when there is impartial contradictory evidence in the record. The findings in this case depend on a comparison of what *all* the witnesses say and what *all* the circumstances indicate. The trial court did not err in basing its judgment upon a review of all the evidence. Nor was his judgment clearly erroneous.

Affirmed.

---

5. *E. g.*, Hawkinson Tire Co. v. Paul E. Hawkinson Co., 13 Ariz.App. 343, 476 P.2d 864 (1970), aff'd 107 Ariz. 255, 485 P.2d 825 (1971). In *Hawkinson*, a breach of contract action, the central issue was whether or not the licensing agreement was in force when plaintiff chose to cancel it. Defendant's president gave uncontradicted testimony that the agreement was in force. The Arizona court held the defendant was estopped to assert otherwise.