Robert F. MERRILL, Appellee,

v.

The NATIONAL CASH REGISTER COM-PANY, a Maryland corporation, Appellant.

No. 72–2036.

United States Court of Appeals, Ninth Circuit.

March 4, 1974.

Ralph J. Lester (argued), Phoenix, Ariz., for appellant.

Richard A. Steiner (argued), and George Welch, Jr., of Roush, Mori, Feinstein & Welch, Phoenix, Ariz., for appellee.

## OPINION

Before MERRILL and ELY, Circuit Judges, and ZIRPOLI,* District Judge.

ELY, Circuit Judge:

Robert Merrill was employed as a senior salesman by the National Cash Register Company (hereinafter "NCR") at its branch office in Phoenix, Arizona. Merrill, contending that NCR was obligated to him for a commission on a certain sale of NCR equipment, brought suit in an Arizona state court. NCR, as authorized by 28 U.S.C. § 1441(a), then removed the action to the District Court.[1] The court, sitting without a jury, found that Merrill was entitled to the commission and entered judgment in Merrill's favor for $14,720, plus costs.

The NCR branch in Phoenix was composed of two divisions, the Accounting Machine Computer Division and the Cash Register Sales Division. Merrill was the senior salesman in the accounting division. According to the employment practices of NCR, each salesman was assigned a specific territory. Within that territory, the salesman was au-

---

* Honorable Alfonso J. Zirpoli, United States District Judge, San Francisco, California, sitting by designation.

1. The action originally was maintainable in federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1332.

thorized to sell certain products. Under Merrill's contract, he was credited with a commission whenever there was a sale of his specified product within his assigned territory, even if he did not participate in the transaction.

In October, 1966, the home office of NCR in Dayton, Ohio sold two pieces of equipment, designated "420 Optical Scanners", to the General Electric Computer Division (hereinafter "GE") in Phoenix. The sale was concededly made within the sales territory of Merrill, as that territory was specified in his contract.

The 420 Optical Scanner is a multiple-purpose piece of equipment. Depending upon the manner in which the scanner is programmed, the machine can convert, for input into a computer, information from any tape-producing equipment, including tape information produced by cash registers and accounting machines. The scanner's function is to "read" the tapes and to transfer the information contained therein to a computer. GE originally contemplated constructing an adapter in order to utilize the scanner in conjunction with a GE computer. Before GE began its experiments with one of the scanners, it requested NCR to furnish tapes. NCR delivered cash register tapes to GE, apparently since those were the only tapes then available in NCR's Phoenix branch office. During the entire experimentation period with the 420 Optical Scanner, the scanner was programmed to receive tapes produced by cash registers only. Be-

cause of its program, the scanner was unable to receive or to function with accounting machine tapes. Ultimately the experimental procedures of GE proved unsatisfactory, and, at GE's request, the two scanners were repurchased by NCR in March, 1967, at a thirty per cent loss to GE.

Since the 420 Optical Scanner had many possible applications, NCR had previously anticipated that conflicting claims concerning sales commissions might arise between its cash register and accounting divisions. In an effort to classify the sales of the 420 Optical Scanner, H. C. Keesecker, a Vice President of NCR, had issued a policy letter on July 16, 1962. The letter attempted to allocate the sales of the scanner to either the cash register or accounting division by establishing four general categories.[2]

Upon learning of the sales transaction with GE, Merrill applied for the sales commission. Considerable discussion was held by various officers of NCR, and the application was finally resolved on November 22, 1967. On that date, W. E. Giesting, Vice President of the Pacific Division, determined, adversely to Merrill, that the commission would be credited to the Phoenix cash register division. Within two years of NCR's final decision, Merrill instituted his suit.

■ Here, NCR attacks the District Court's conclusion that Merrill qualified for the commission. First, NCR contends that the employment contract re-

---

2. The letter established the following four categories:

*Retail Applications*

Where the 420 Optical Reader is sold or leased for a retail application of any type, and the primary function of the Optical Reader is the reading of tapes prepared by cash registers, the sale or lease of the Optical Reader will be the exclusive responsibility of the cash register sales organization.

*Financial Institutions*

The sale or lease of the 420 Optical Reader to Financial Institutions including, but not by way of limitation to, banks, building and loan associations, and credit unions, will

be the exclusive responsibility of the accounting machine organization.

*Service Bureaus*

The sale or lease of the Optical Reader to Service Bureaus regardless of the application will be considered as open territory and such sales or leases will be credited to the territory salesman who secures the order regardless of accounting machine, cash register, or adding machine affiliation.

*Other Applications*

For the present, all other applications of the 420 will be credited to the territory selling man in accordance with the classification of the machine creating the original journal tape.

quired Merrill to submit his dispute, for a final decision, to a designated arbitrator.[3] The short answer to this contention is that the District Court found that no arbitration proceeding was ever conducted by NCR. This finding is supported by substantial evidence, for NCR neither notified Merrill of an arbitration hearing nor afforded him an opportunity to appear and present evidence; therefore, no valid arbitration award occurred. *See* Ariz.Rev.Stat.Ann. § 12–1505 (Supp.1973); Citizens Bldg., Inc. v. Western Union Tel. Co., 120 F.2d 982 (5th Cir. 1941).[4]

■ NCR next asserts that the two-year limitation period imposed by the contract bars Merrill's action. Its contention evidently is based on the premise that Merrill's claim for a commission accrued in March, 1967, the date that the second 420 Optical Scanner was delivered to GE. We agree, however, with the District Court's finding that Merrill's claim was not resolved until November, 1967 and that the contractual limitation period did not begin until that date. *See* Hawkinson Tire Co. v. Paul E. Hawkinson Co., 13 Ariz.App. 343, 476 P.2d 864 (1970), aff'd 107 Ariz. 255, 485 P.2d 825 (1971).

Finally, NCR contends that neither Merrill's employment contract nor established NCR policy entitled Merrill to a commission on the sale. NCR correctly maintains that in order for Merrill to qualify for the commission, he must find authorization under the policy letter of July, 1962.[5] Although the court below upheld Merrill's claim, it failed to indicate which provision, either in Merrill's employment contract or in the Keesecker policy letter, obligated NCR to award Merrill the commission.

■ The only conceivable basis upon which Merrill could rely is the fourth category set forth in the policy letter, since, under the facts, the other three categories are obviously unavailing to him. That fourth category, designated "Other Applications", declares that a sale of the 420 Optical Scanner "will be credited to the territory selling man in accordance with the machine creating the *original journal tape*." (Emphasis added.) Both parties concede, and the District Court so found, that the original tape used by GE was produced by cash registers. Merrill emphasizes the District Court's finding that cash register tapes were employed by GE solely because those were the only tapes available from the NCR Phoenix branch office. This finding, however, in no way supports the court's conclusion that Merrill was thereby entitled to a commission under the provisions of the controlling policy letter, and it cannot justify a "rewriting" of the controlling contractual terms. Merrill had the burden of proving that he was entitled to the commission, *see* Deck v. Hammer, 7 Ariz.App. 466, 440 P.2d 1006 (1968), but he was unable affirmatively to demonstrate that the "original journal tape"

3. The employment contract contained the following clause:
   You agree to permit the head of our Sales Department or the person designated by him to arbitrate any controversy between you and any other salesman, or between you and your Branch Manager, concerning the commission credit which may be properly due you or such other salesman on any customer's order and the decision made in such controversy shall be final.

4. Neither party requested that the District Court order arbitration proceedings in the event the court found that arbitration had not in fact occurred. Under Arizona's law, the parties, in these circumstances, have waived their right to arbitration. *See* Bolo

Corp. v. Homes & Son Constr. Co., 105 Ariz. 343, 464 P.2d 788 (1970).

5. Although, at oral argument, Merrill's counsel contended that the explicit terms of the employment contract, exclusive of the policy letter, obligated NCR to pay Merrill the commission, he was unable to specify any such provision. The employment contract does provide that Merrill is entitled to a commission when an "accounting machine" is sold in his assigned territory. It was conceded, however, that the 420 Optical Scanner is not an "accounting machine". It was the apparent purpose of the Keesecker policy letter to qualify salesmen in the accounting computer organization for the receipt of commissions under certain circumstances.

was created by an accounting machine. Moreover, the evidence positively demonstrates that the 420 Optical Scanners, one of which was in the possession of GE for five months, were unable to receive accounting machine tapes during the entire experimentation period. There simply is no evidentiary basis upon which we can properly sustain the challenged judgment.

Upon remand, the complaint will be dismissed.

Reversed and remanded, with directions.