WANG LABORATORIES,
INC., Plaintiff,

v.

APPLIED COMPUTER SCIENCES,
INC., James Abbenhaus and Roger
D. Noel, Defendants.

Civ. A. Nos. 83–1914–Y, 83–2506–Y,
84–0352–Y and 86–3591–Y.

United States District Court,
D. Massachusetts.

July 2, 1990.

Paul F. Ware and Michael Tuteur, Loretta M. Smith, Goodwin, Procter & Hoar, Boston, Mass., for plaintiff.

Jack Pirozzolo, Wilco, Pirozzolo & McCarthy, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

### I. BACKGROUND

■ Wang Laboratories, Inc. ("Wang"), a Massachusetts corporation, here moves for summary judgment against Applied Computer Sciences, Inc. ("Applied"), a Washington corporation, to enforce what it claims—and Applied denies—is a fully effective, albeit unsigned, settlement agreement (the "April agreement") dated April 22, 1988, the day on which it is undisputed these parties reported to the Court that these related cases were "settled."[1]

Both Wang and Applied manufacture and market data processing systems. Since 1983, the two companies have been litigating the validity of certain Wang patents which Wang alleges have been infringed by Applied. Specifically, this initial litigation concerned Wang's U.S. Patent No. 4,145,739 ("the '739 patent"), which relates, for present purposes, to Wang's "WPS," "OIS," and "VS" data processing systems. Civil Action Nos. 83–1914–Y, 83–2506–Y, 84–0352–Y. On February 5, 1986 the Court entered a Consent Judgment holding the '739 patent valid and infringed by Applied. In connection with the judgment, Wang granted Applied three licenses (the

---

1. Throughout its briefs, Applied argues that the parties did not inform the Court that the case had settled but only that they had agreed to settle. This is a distinction without any practical significance for the efficient operation of this federal court. Regardless of how it is phrased, when the parties communicate to the Court on the eve of trial that their case will not be going forward because they have settled or agreed to settle or words to that effect, the Court is entitled to interpret their communication to mean that they *have settled* and to schedule yet another pair of waiting litigants for trial on that date. To do otherwise would be to squander a limited national resource, trial time in a federal court. *See United States v. Ottati & Goss, Inc.,* 900 F.2d 429, 444 (1st Cir.1990); *In re Acushnet River & New Bedford Harbor,* 712 F.Supp. 1019, 1030 n. 19 (D.Mass.1989); *Chappee v. Commonwealth of Massachusetts,* 659 F.Supp. 1220, 1226 n. 9 (D.Mass.1987), *rev'd on other grounds sub nom., Chappee v. Vose,* 843 F.2d 25 (1st Cir. 1988); Report of the Federal Courts Study Committee (April 2, 1990) pp. 4–9; American Law Institute Study of Complex Litigation (Tent. Draft May, 1989).

"License Agreements") covering the manufacture, sale, and export of a specific number of printers, certain Wang trade secret information relating to the interconnection of peripheral devices—terminals and printers—to its systems, and certain copyrighted Wang software used in its "WPS," "OIS," and "VS" systems. In addition, the Court prohibited Applied from further infringing the Wang '739 patent.

Later that year, Wang became concerned that Applied was violating the terms of the Consent Judgment and License Agreements by manufacturing interface boards and exporting them to an Applied affiliate in Ireland without paying license fees to Wang. Wang therefore filed another complaint for breach of contract and moved that the Court order Applied to show cause why it should not be held in contempt of the Consent Judgment. Civil Action No. 86–3591–Y.

When the Court set Monday, April 25, 1988, as the trial date for the Order to Show Cause, both sides commenced serious settlement discussions. Counsel and representatives of the two parties met for two days, Thursday, April 21, and Friday, April 22, in a final attempt to reach a settlement. In attendance were the President of Applied and co-defendant in these consolidated cases, Roger Noel, Applied's attorneys Richard Innis, Esq. and Lawrence Wittenberg, Esq. of Hale & Dorr, Wang Chief Patent Counsel Michael Shanahan, Esq., Wang Senior Product Manager James Upham, and Wang attorneys Steve Jackman, Esq., Loretta Smith, Esq., and Paul Ware, Esq. of Goodwin, Proctor & Hoar. Working from a previously exchanged draft agreement marked "Master," the negotiators discussed its provisions at length, inserting handwritten modifications as necessary. Before the close of business on Friday, April 22, 1988, Loretta Smith, in the presence of Richard Innis, telephonically reported the case settled to Katherine Duffy, Esq., Courtroom Deputy Clerk in this session.

On Monday, April 25, 1988, Wittenberg sent to Wang and Applied freshly "word processed" copies of the April agreement, i.e., the "Master" with modifications. Wang and Applied conducted "final" reviews of the document, and both objected to it. Counsel for Wang, for example, in a May 20, 1988 letter, noted that Wang had completed its "final" review and that Wang wanted to make one "substantive" change and several "semi-substantive" changes. The parties conducted further negotiations into September, 1988.

On April 26, 1988, based upon the parties' representation of April 22, 1988 that the case had been settled, the Court dismissed the case "without prejudice to the right upon good cause shown to reopen the action by May 26, 1988 if settlement is not consummated." The parties jointly moved to enlarge the time in which to reopen the action, first to June 27, then to August 1, and finally to September 15, 1988. In each instance, the parties reported to the Court that "[s]ettlement of these cases has included the negotiation of a lengthy and detailed settlement agreement which due to conflicts in the parties' schedules is not yet in final form and has not yet been executed."

Although neither party filed a motion to enlarge the time for reopening the case beyond September 15, 1988, apparently neither party believed that the case had finally settled in all its details by that date. On February 8, 1989, Wang filed a Motion to Vacate Order of Dismissal, asserting that the terms of the settlement had been reduced to a written agreement and that Applied had refused to sign it. On February 21, 1989, Applied responded that the verbal agreement to settle was subject to the resolution of certain technical details and reduction of the agreement to written form acceptable to Wang and Applied, that in the exchange of drafts both Wang and Applied proposed provisions deemed unacceptable by the other, and that the parties were unable to prepare an agreement acceptable to both parties.

## II. REOPENING THE CASE

This Court will not reopen this case generally in order to return to square one. Our adversary system places a high value

on the private resolution of disputes by responsible litigants without third party ordering. Such resolution best and most precisely protects the autonomy and self determination of individual litigants caught up in court proceedings. The efficient disposition of cases is likewise a goal which the judicial system and the public may properly demand. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 390, 105 S.Ct. 1327, 1337, 84 L.Ed.2d 274 (1985) (Burger, C.J., concurring) ("the federal courts have direct interests in ensuring that their resources are used efficiently"). The conduct of the parties here, however, has frustrated achievement of either goal. Consequently, after first preparing the case for trial and then administratively closing it upon the reported settlement, the Court finds before it the same parties still disputing the same issues. It is time these related cases were finally resolved.

■■■■ This Court holds that, by failing to move to enlarge the time for filing settlement papers beyond September 15, 1988, the parties waived the right to reopen the case granted to them in the Court's dismissal order. Moreover, even if the parties had made a timely motion to enlarge the time, they would have been unable to show good cause to reopen the case. The Court had already granted the parties a period of approximately five months (April 26, 1988 —September 15, 1988) to iron out what should only have been minor, technical modifications to the April agreement; after all, by reporting the case as settled, the parties had led the Court to believe that there was no longer any dispute concerning the substantive terms of the settlement. This Court has already allowed the parties the freedom to settle of their own accord.

### A. Jurisdiction

■■■■ Indeed, there is respectable authority to the effect that this Court ought now simply wash its hands of the matter. Having reported the case settled, it can be argued that the case or controversy involving the federal patent questions had come to an end, thus extinguishing the Court's subject matter jurisdiction and requiring that any further questions of a contractual nature be resolved in the state courts. *See McCall–Bey v. Franzen*, 777 F.2d 1178, 1185–86 (7th Cir.1985) (Posner, J.).

The First Circuit also may doubt a district court's ability to enforce settlement agreements in some situations, *see United States v. Baus*, 834 F.2d 1114, 1127 n. 13 (1st Cir.1987). Under the "strict view of subject matter jurisdiction," *id.*, described by the *Baus* court,

[federal courts] do not necessarily have jurisdiction to hear collateral disputes arising under state contract law, at least not where the district court has not explicitly retained jurisdiction, *McCall–Bey*, 777 F.2d at 1186–90, or where the district court has not approved of the settlement agreement and incorporated it into an order of the court, *Fairfax [Countywide Citizens Assoc. v. County of Fairfax]*, 571 F.2d 1299, 1303 n. 8 (4th Cir.1978), or where there is not some independent basis for federal jurisdiction over the contract dispute. *Fairfax*, 571 F.2d at 1303 n. 8.

*Id.*

In this instance, however, this Court has continuing subject matter jurisdiction over the April agreement because (1) it is seeking to enforce its own Consent Judgment and (2) there is an independent ground for subject matter jurisdiction over the two parties to the April agreement.

On February 5, 1986, the Court entered a Consent Judgment intended to terminate the original patent litigation between Wang and Applied. In that judgment, it was stipulated and adjudged that

U.S. Letters Patent No. 4,145,739 is valid, infringed and enforceable. ACS, its officers, directors, agents[,] employees and attorneys, are permanently enjoined from infringing, contributorily infringing, or inducing infringement of that patent.

Consent Judgment at para. 1 [Docket No. 103]. On December 12, 1986, Wang filed a complaint with the Court for breach of contract with respect to the April agreement and filed a motion asking the Court to

require Applied to show cause why it should not be held in contempt for violating the February 5 Consent Judgment. In response, the Court set an April 25, 1988 trial date. When the parties informed the Court on April 22, 1988, that their case had settled, they were necessarily speaking of the contempt action as well as the contract action. Therefore, in enforcing the April agreement, the Court is enforcing its own Consent Judgment.[2] Moreover, by "permanently enjoin[ing]" Applied from infringing the '739 patent, the Court "explicitly retained jurisdiction." *See Baus,* 834 F.2d at 1127 n. 13. In addition, because there is diversity of citizenship between Wang and Applied and the amount in controversy exceeds $50,000, there is an "independent basis for federal jurisdiction over the [settlement] dispute." *Id.*[3]

## B. Judicial Estoppel

Generally speaking, judicial estoppel is the doctrine under which "a party is bound by his judicial declarations and may not contradict them in a subsequent proceeding involving [the] same issues and parties." Black's Law Dictionary 761 (5th ed. 1979).[4] Although the First Circuit has yet to delineate fully the contours of this doctrine, it nevertheless has concluded that

"intentional self-contradiction" should not be "used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Id.* [*Patriot*

*Cinemas Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (1st Cir.1987) ] (quoting *Scarano v. Central R.R. Co.,* 203 F.2d 510 (3d Cir.1953)). If such a tactic was attempted, the court was justified in acting to deny the unfair advantage. *Id.* In this circuit, then, when a litigant is "playing fast and loose with the courts," that party will be precluded from asserting a position inconsistent with a position he or she took in an earlier proceeding. *Patriot Cinemas,* 834 F.2d at 212. *Accord United States v. Kattar,* 840 F.2d 118, 129–30 n. 7 (1st Cir.1988). *United States v. Levasseur,* 846 F.2d 786, 792 (1st Cir.1988).

◼ Regardless of what motivates a party to offer contradictory positions in different proceedings, "[t]he primary concern of the doctrine of judicial estoppel is to protect the integrity of the judicial process." *United States v. Levasseur,* 846 F.2d at 792. Because courts, in making their rulings, frequently rely on the parties' representations, a court subjects itself to the risk of inconsistent rulings (i.e., different than previous rulings involving the same issues and the same parties). A court avoids this possibility of inconsistency by invoking the doctrine of judicial estoppel. Therefore, when considering whether to estop a party from taking a position, a court should consider whether that party took the opposite position in a prior judicial pro-

---

**2.** *See Fairfax Countywide Citizens Assoc. v. County of Fairfax,* 571 F.2d 1299, 1303 n. 8 (4th Cir.1978) ("Where the settlement agreement is approved and incorporated into an order of court, the district court possesses jurisdiction to enforce its own order.").

**3.** *See Fairfax,* 571 F.2d at 1303 n. 8 ("Where there has been no incorporation [of the settlement agreement into a court order], it is likely that the "independent ground" [for jurisdiction] most often asserted will be that of diversity of citizenship between the parties to the settlement agreement. 28 U.S.C. sec. 1332. This is not to suggest, however, that other bases of federal jurisdiction may not also be available in appropriate situations, *e.g.,* 28 U.S.C. secs. 1345, 1346 [United States as party].").

**4.** It should be noted that Federal Rule of Civil Procedure 8(e)(2) generally prevents the application of the doctrine of judicial estoppel to a

single proceeding such as this. *See* Note, *Judicial Estoppel: The Refurbishing of a Judicial Shield,* 55 Geo.Wash.L.Rev. 409, 420 (1987) (concluding that "judicial estoppel cannot be applied to inconsistent assertions made in the course of a single trial" because rule 8(e)(2) expressly allows alternative pleadings). *See also United States v. Levasseur,* 846 F.2d 786, 793 (1st Cir.1988) ("before being deemed to be 'playing fast and loose,' a party must attempt to invoke the authority of *one tribunal* to override or flout a bargain made with *another*") (emphasis added). This general rule does not apply to this case, however, because the communication to the Court by Applied and Wang on April 22, 1988 that the case had settled was not a pleading, but an "explicit representation," and "[o]f course a party may be bound to an explicit representation or agreement made with a court...." 18 C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure: Jurisdiction* sec. 4477 (1981 & Supp.1989).

ceeding, not whether the party now taking a contradictory position intended to deceive that court.[5]

■ Federal law controls the application of judicial estoppel in this case. First, this Court has here "explicitly retained jurisdiction," *see Baus*, 834 F.2d at 1127 n. 13, of a patent case, thereby giving it federal question jurisdiction. Because it has federal question jurisdiction, the Court is "not bound by the strictures of *Erie*" [*Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)] and therefore "choose[s] to use federal law." *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 215 (1st Cir.1987).

Second, even if the Court had diversity jurisdiction only, the proper estoppel law would be federal because the parties have made each of their two contradictory representations to a federal court. While the majority of circuits that have considered the question have held that state law controls the application of judicial estoppel in diversity cases, those cases involved situations where the federal court was considering whether to judicially estop a party from contradicting a position it had previously taken in a state court proceeding.[6] The invocation of judicial estoppel necessarily involved the state as well as the federal courts. In the instant case, however, protection of the integrity of the state courts is simply not at issue. Therefore, the ques-

tion of which law to apply "primarily concerns federal interests, and, consequently, federal courts must be free to develop principles that most adequately serve their institutional interests." *Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 598 n. 4 (6th Cir.1982) (citations omitted).

Finally, even if state law controlled in this case, the Court may still judicially estop the parties from reopening the instant case because the doctrine of judicial estoppel is an established and accepted legal doctrine in Massachusetts. In fact, the courts of this Commonwealth have long held that

> "A party who has successfully maintained a certain position at a trial cannot in a subsequent trial between the same parties be permitted to assume a position relative to the same subject that is directly contrary to that taken at the first trial. *Hooker v. Hubbard*, 102 Mass. 239 [1869]. *Sherer v. Collins*, 106 Mass. 417 [1871]. *Lilley v. Adams*, 108 Mass 50 [1871]." *City of Boston v. Nielsen*, 305 Mass. 429, 433, 26 N.E.2d 366 [1940]. *Pierce's Case*, 325 Mass. 649, 659, 92 N.E.2d 245 [1950].

*Gordon v. Lewitsky*, 333 Mass. 379, 381, 131 N.E.2d 174 (1955) (Wilkins, J.).[7]

■ In order to protect the integrity of its own processes and fairly, consistently, and equally address the concerns of all

---

**5.** The Court expresses no opinion as to whether Wang, Applied, or any of their several attorneys have attempted to deceive it.

**6.** The cases holding that state law supplies the rule of decision are: *Konstantinidis v. Chen*, 626 F.2d 933 (D.C.Cir.1980); *Ellis v. Arkansas La. Gas Co.*, 609 F.2d 436 (10th Cir.1979); *In re Southwestern Bell Tel. Co.*, 535 F.2d 859 (5th Cir.1976), *modified*, 542 F.2d 297 (5th Cir.1976), *rev'd on other grounds sub nom. Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977); *Sholly v. Annan*, 450 F.2d 74 (9th Cir.1971). The cases holding that federal law supplies the rule of decision are: *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir.1982); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162 (4th Cir.1982). Of these six cases, all but *Edwards* involved situations in which the federal court had to determine whether to judicially estop a party from taking a position which was contradictory to the position it had taken in a prior state court proceeding. In *Edwards*, one

of the parties had taken a prior contradictory position with the Veterans Administration.

**7.** In *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 215 (1987) the First Circuit cited *Brown v. Gerstein*, 17 Mass.App.Ct. 558, 568 n. 19, 460 N.E.2d 1043, 1051 n. 19 (1984), for the proposition that "it remains an open question whether the Massachusetts courts would employ judicial estoppel." While the *Brown* court may have believed that the doctrine of judicial estoppel "has not yet been expressly recognized or defined by the courts of this Commonwealth," *Brown*, 17 Mass.App.Ct. at 568 n. 19, 460 N.E.2d 1043, it failed to mention *Gordon v. Lewitsky*, 333 Mass. 379, 381, 131 N.E.2d 174 (1955), in which the Supreme Judicial Court of Massachusetts recognized, defined, and applied judicial estoppel. Perhaps this confusion is due to the fact that neither *Gordon* nor the cases cited therein use the term "judicial estoppel."

litigants who await and need the attention of the judiciary, the Court will judicially estop Applied from now claiming that settlement was not reached on April 22, 1988 as represented to the Court on that date. In dismissing the underlying litigation, the Court allowed the parties thirty days to reach final agreement and provided them with a procedural mechanism for extending the period beyond thirty days only because it understood the representation of the parties that they had agreed to settle to mean that they had reached agreement on all substantive issues involving the underlying litigation. Applied's present desire to revert to square one and start the litigation process afresh is directly contrary to the representation it caused to be made to the Court on April 22, 1988.

Simply put, Applied is here taking contradictory positions on the same issue in unabashed pursuit of the main chance. On April 22, 1988, when Applied's president, Roger D. Noel, and counsel, Richard J. Innis, Esq., watched outside counsel for Wang notify the Court that the parties had agreed to settle, Applied must have realized that Applied had just agreed to settle on the conditions it was then discussing with Wang. In addition, Applied must have believed that it was in its own best interest to settle the case rather than commence trial two days later; otherwise, it would not have acquiesced to Wang's notifying the Court. But now, after deciding that it is in its own best interests to continue to litigate with Wang rather than to perform the terms of the settlement agreement, Applied seeks to take the contradictory position that it never settled. By agreeing to settle in April, 1988, however, Applied gave up its right to litigate and received the benefit of avoiding the risk of trial. Having done so, Applied cannot now reclaim that right, and thus unilaterally determine when, if ever, it will submit to trial.

### III. WHAT NOW?

#### A. Summary Judgment

■ Since the Court properly has jurisdiction over these litigious parties but has judicially estopped them from relitigating their underlying dispute, what happens now? Wang offers an answer. It moves for summary judgment upon the agreement it claims it reached with Applied prior to reporting the case settled.

In a civil case, a party is entitled to summary judgment if it can show that (1) there is no genuine issue of material fact and (2) it is entitled to judgment as matter of law. Fed.R.Civ.P. 56(c). To explicate this standard further, the First Circuit has held that a factual dispute is "material if it 'affects the outcome of the litigation,' and genuine if manifested by 'substantial' evidence 'going beyond the allegations of the complaint.'" *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201, 1204 (1st Cir.1983) (quoting *Hahn v. Sargent,* 523 F.2d 461, 464 [1st Cir.1975], *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 [1976]). In considering whether to grant a motion for summary judgment, "the court must view the record and draw inferences in the light most favorable to the opposing party." *Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 815 (1st Cir.1987); *Astra,* 718 F.2d at 1204; *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482, 486 (1st Cir.1981); *Hahn,* 523 F.2d at 464.

Here, because Applied is judicially estopped from denying its settlement with Wang, summary judgment must be granted and the only possible remaining question involves ascertaining what terms are to be included in the settlement agreement. See Part III, C, *infra* at 1001.

Moreover, as a completely independent and alternative ground of decision, this Court allows Applied to raise the alleged failure to settle as a defense, but nevertheless enforces the April agreement by granting Wang's motion for summary judgment because the evidence of settlement "is so one-sided that [Wang] must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–252, 106 S.Ct. 2505, 2511–2512, 91 L.Ed.2d 202 (1986). Specifically, after examining the evidence in the light most favorable to Applied, the

Court holds that there is no genuine issue of material fact relating to the existence of the April agreement and, therefore, Wang is entitled to summary judgment as matter of law.

The following facts are not genuinely disputed. First, over the course of two days prior to the trial, the *president* of Applied met with representatives of Wang in order to "exhaust the possibility of settlement before trial." Defendant's Opposition to Motion for Summary Judgment at 8 [Docket No. 16]. Second, during those two days which even Applied concedes were dedicated to negotiating a settlement, the parties worked from a draft settlement agreement marked "Master" and modified the draft as they negotiated over each of its sections. Third, on Friday, April 22, 1988 at 4:55 p.m., five minutes prior to the close of business in the Clerk's office of this Court, counsel for Applied watched counsel for Wang notify the Court that the case had settled. At this point, the only objectively reasonable description of what had transpired between Wang and Applied is that the parties had agreed to settle and had reported their case as settled to the Court.

Although Applied offers affidavits saying that its President never *intended* to enter into a settlement agreement with Wang on April 22, 1988, *see* Affidavit of Roger D. Noel (April 27, 1989); Affidavit of Edward V. Abrahamson (April 27, 1989), it nowhere states that it *communicated* its intent not to settle to Wang. For that reason, "[t]he fundamental problem with [Applied's] stance is that it sidesteps the established principle that 'contracts depend on objective manifestations of consent and not on uncommunicated subjective expectations.'" *Mathewson Corp. v. Allied Marine Industries, Inc.*, 827 F.2d 850, 853 (1st Cir.1987) (quoting *Bushkin Associates, Inc. v. Raytheon Co.*, 815 F.2d 142, 146 [1st Cir.1987]). In addition, Richard J. Innis, Esq., outside counsel for Applied who was present at the settlement discussions, concedes that it was objectively reasonably for Wang to believe that the case had settled. *See* Affidavit of Richard J. Innis, Esq., at para. 3 (April 25, 1989) ("At the

conclusion of the meeting on April 22, 1988, it appeared that the parties had agreed to settle their litigation...."). Finally, because there is nothing in the record which suggests that at the conclusion of negotiations on Friday, April 22, 1988 Applied still expected to go to trial against Wang on Monday, April 25, 1988, the conclusion appears inescapable that Applied itself believed that the case had settled.

## B. Statute of Frauds

Judicially estopping Applied and granting summary judgment for Wang does not end the matter. The only written evidence of the April, 1988 agreement is the modified but unsigned "Master" agreement. The April agreement is thus an oral settlement agreement. The Court must therefore determine whether the April agreement is unenforceable because it violates the statute of frauds.

■ As a preliminary matter, the Court holds that it must apply federal common law in interpreting the April agreement. While this case involves the interpretation of a settlement agreement, the substantive rights and liabilities of both Wang and Applied ultimately derive from federal patent law. "The enforceability or validity of such settlement agreements is determined by federal law where the substantive rights and liabilities of the parties derive from federal law." *In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 883 (3rd Cir.1984) (citing *Mid–South Towing Co. v. Har–Win, Inc.*, 733 F.2d 386 [5th Cir. 1984]). Moreover, "the federal courts are competent to apply their own law in deciding whether a lawsuit has been settled...." *Bergstrom v. Sears, Roebuck & Co.*, 532 F.Supp. 923, 931 (D.Minn.1982). Alternatively, even if this case is viewed as one in which the substantive rights and liabilities of the parties derive from state contract law, the latest pronouncement by the First Circuit on this subject suggests that federal common law still supplies the rule of decision:

Settlement of a case already in progress in the federal courts implicates

matters of considerable federal concern, entirely apart from the substantive merits. In such situations, the federal interest is sufficiently great that the proper rule of decision may well be a uniquely federal one.

*Mathewson,* 827 F.2d at 853 n. 3.

 But regardless of whether federal common law or Massachusetts law supplies the rule of decision, the statute of frauds does not make the April agreement unenforceable. On the one hand, if federal common law applies, then the oral April, 1988 agreement is fully enforceable. *See Boston Shipping Ass'n, Inc. v. Int'l Longshoremen's Ass'n Local 1066,* No. 81–1710–S, 1981 WL 2245 (D.Mass. Nov. 23, 1981) (LEXIS, Genfed Library) (holding that, in labor disputes, federal common law contains no statute of frauds); *Theatre Time Clock Co. v. Motion Picture Advertising Corp.,* 323 F.Supp. 172, 174 (E.D.La. 1971) (enforcing oral settlement of Sherman Act case notwithstanding Louisiana statute of frauds for settlement agreements).[8]

 On the other hand, even if Massachusetts law governs the April agreement, the statute of frauds would not apply. First, Applied admitted the existence of the April agreement when it acquiesced in reporting the case as settled to this Court on April 22, 1988. Also, in memoranda provided to the Court during the course of this litigation, Applied concedes that it arrived at a settlement with Wang on April 22, 1988. *See* Defendant's Opposition to Motion for Summary Judgment at 9 ("At the end of the day on April 22 it appeared that the parties had agreed to settle their litigation subject to a cooperative resolution of

certain technical details and to reduction of the entire agreement to documentation acceptable to Wang and ACS."); Wittenberg Affidavit at para. A (April 27, 1989) (same); Innis Affidavit at para. 3 (April 25, 1989) (same). Since Applied concedes that it settled and offers no evidence tending to show that the April agreement did not contain the terms of that settlement, Applied has admitted the existence of the April agreement. Applied therefore cannot raise the statute of frauds as a defense. *See Pitts v. Halifax Country Club, Inc.,* 19 Mass. App.Ct. 525, 532 n. 9, 476 N.E.2d 222 (1985) (concluding in a case involving Article 8 of the Uniform Commercial Code that corporation had acknowledged oral agreement to repurchase shares in its memoranda filed in the course of litigation and therefore could not plead statute of frauds in bar of agreement), *appeal denied,* 394 Mass. 1104, 478 N.E.2d 1274 (1985) (Table).

Second, applying Massachusetts law, the Court judicially estopped Applied from raising the statute of frauds as a defense because Applied previously took the position that this case had settled. Applied's present position that the April agreement is barred by the Massachusetts statute of frauds is sufficiently contrary to its earlier position that the case had settled to allow this Court to invoke judicial estoppel. Part II B. *supra* at 997–98.

 Third, the Massachusetts statute of frauds does not apply where there can be performance of the contract by both parties within one year. *Bolton v. Van Heusen,* 249 Mass. 503, 506, 144 N.E. 384 (1924) ("When it does not appear that a contract cannot in any event be performed

---

**8.** To this Court, it would be blinking reality to hold that federal common law contains a statute of frauds in cases such as the instant one where a party changes its position with respect to whether it has settled. Parties frequently negotiate up to the eve of trial in order to obtain the best possible settlement. Once parties agree to settle, they then notify the court by the fastest means available, which is usually by telephone, in order that the court may schedule another trial for that day. By allowing telephonic notification of settlement, the courts simultaneously satisfy two critical institutional objectives: (1) maximization of flexibility in negotiating settle-

ment, which encourages settlement, and (2) maximization of utilization of trial time. In order to allow courts to continue to satisfy these objectives, the issue in determining whether the parties have settled is whether the parties have notified the court that their case has settled, not whether there is a settlement agreement which passes muster under the statute of frauds. Holding that federal common law does contain a statute of frauds here would make it more difficult for parties to settle because they could not report a case as settled until they had produced an agreement which would conform to the statute of frauds.

within a year, then it is not within the statute of frauds and need not be in writing"). *Joseph Martin, Inc. v. McNulty*, 300 Mass. 573, 575, 16 N.E.2d 4 (1938) ("[W]here an oral contract may, by its terms, be fully performed within the year it is not unenforceable by reason of the statute [of frauds]"). In a case involving an express twelve-month agreement between an individual and a corporation, the Supreme Judicial Court of Massachusetts held that the agreement was not within the statute because the agreement could be fully performed within one year under various circumstances, including if the corporation went out of business. *Rowland v. Hackel*, 243 Mass. 160, 162, 137 N.E. 265 (1922). Although the April agreement contains numerous provisions extending beyond one year, it also contains section 5.2 dealing with the possibility of Applied going out of business.

> If [Applied] shall become bankrupt or insolvent and/or if the business of [Applied] shall be placed in the hands of a receiver, assignee in bankruptcy or trustee in bankruptcy, whether by the voluntary act of [Applied] or otherwise, this Agreement and the licenses granted under Paragraphs 1.0, 1.1 and 1.2 hereof shall immediately terminate.

April agreement at 24. Reading section 5.2 in light of *Rowland*, this Court cannot help but conclude that Applied could perform the contract within one year by going out of business during that time. Therefore, the April agreement is not within the Massachusetts statute of frauds.

C. Terms of the Settlement Agreement

When the parties reported the case to the Court as settled, it was objectively reasonable for them to believe that (1) they had reached agreement on all substantive issues, *supra* at 998–99, (2) the modified draft agreement marked "Master" con-

tained the terms of their agreement,[9] and (3) the only additional modifications to the settlement agreement that were still possible were those which both parties would accept.

Even though the parties are judicially estopped from taking the position that the underlying litigation has not settled, the Court intends neither to determine the precise terms of their settlement nor to allow the parties to resume their negotiations on a blank slate. Instead, the Court returns Wang and Applied to the same positions they were in when they reported the case as settled by holding them to their original representation that they had agreed to settle the case and allowing each side the same amount of negotiating flexibility that they had then. Specifically, the April agreement, *i.e.*, the document marked "Master" with handwritten modifications made on April 21 and 22, 1988, constitutes a valid and binding contract between Wang and Applied effective as of April 22, 1988. Either party may enforce the terms of such agreement commencing sixty days from the date of this opinion. During that time, the parties may modify the April, 1988 agreement to the extent that they can mutually agree on new terms.

IV. CONCLUSION

The Court holds that Applied is judicially estopped from taking the position that the April agreement is not a valid settlement agreement between Applied and Wang. The Court ALLOWS the motion to vacate the order of dismissal solely to consider Wang's motion for summary judgment, and GRANTS that motion for summary judgment on the ground that there is no factual dispute due to the Court's judicially estopping Applied and, in the alternative, the affidavits and opposing materials submitted by Applied raise no genuine issue of

---

**9.** Although neither side formally executed the "Master" draft agreement, it contains all of the terms agreed to by Wang and Applied. First, during the course of negotiations, both sides worked off of copies of the "Master" draft agreement; in fact, there is no other competing document which either party claims embodies the substance of their April negotiations. Second,

whenever the parties were dissatisfied with the language in the "Master" draft agreement, they made handwritten modifications to it. Third, at the time the parties reported the case as settled, the only document before them was the "Master" draft agreement with handwritten modifications.

material fact but that the April agreement is a valid settlement agreement between Applied and Wang. The parties have sixty days mutually to agree to a modification of the April agreement. If the parties cannot reach agreement on changes to the April agreement within those sixty days, then the April agreement as it now stands may be enforced on the sixtieth day, it having become effective as between the parties on April 22, 1988.

SO ORDERED.