**Kevin O'ROURKE, Plaintiff,**

v.

**JASON INCORPORATED, Defendant.**

**Civil Action No. 94–30167–MAP.**

United States District Court,
D. Massachusetts.

Sept. 10, 1997.

PONSOR, District Judge.

Upon *de novo* review this Report and Recommendation is hereby adopted. Plaintiff's motion to enforce the settlement is DENIED; defendant's motion for summary judgment is ALLOWED. The clerk is ordered to enter judgment for defendant. So ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT (Docket No. 48) and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 50)*

August 15, 1997

NEIMAN, United States Magistrate Judge.

## I. INTRODUCTION

This matter concerns Kevin O'Rourke ("Plaintiff")'s motion to enforce a professed settlement agreement against Jason Incorporated ("Defendant"). Plaintiff asserts, among other things, that Defendant had agreed to settle his complaint and that the doctrine of judicial estoppel should apply. Denying that a settlement agreement had ever been finalized, Defendant in turn has moved for summary judgment, contending that the statute of limitations precludes any relief.

Defendant's motion for summary judgment has been referred to this Court for a report and recommendation pursuant to Rule 3 of the Rules of United Sates Magistrates of the United States District Court for the District of Massachusetts. 28 U.S.C. § 636(b)(1)(B). Because Plaintiff's motion also entails a potentially dispositive issue, the Court has addressed that motion pursuant to Rule 3 as well. For the reasons indicated below, the Court recommends that Plaintiff's motion to enforce the settlement be denied and that Defendant's motion for summary judgment be granted.

Charles J. Sclafani, Law Offices of Irwin I. Weitz, Springfield, MA, for Plaintiff.

Timothy P. Wickstrom, Tashjian, Simsarian & Wickstrom, Worcester, MA, for Defendant.

## II. BACKGROUND

There is no genuine dispute as to the following facts, many of which were explored

in the Court's August 23, 1996 report and recommendation regarding Defendant's previous motion for summary judgment. (*See* Docket No. 35.)

At the time of the accident underlying this lawsuit, Plaintiff was employed by the Springfield Resource Recovery Plant in Agawam, Massachusetts. As a shift supervisor and engineer, he monitored and maintained the plant's boilers. On July 14, 1991, Plaintiff investigated a malfunction in a boiler. The hopper doors on the boiler in question were hinged at the bottom and opened from top to bottom by way of two sets of nuts and washers. Plaintiff unscrewed the nuts securing the doors in an attempt to cool down the system to facilitate further investigation. When Plaintiff began to unscrew the nuts on one particular door, he observed leaking water and turned away. Pressure within forced the hopper door to swing open, causing Plaintiff to sustain first and second degree burns on his legs and back from scalding water. The injuries required immediate hospitalization and ongoing treatment.

Plaintiff's product liability complaint against Defendant—who assertedly designed and manufactured the hopper doors—was filed on July 15, 1994. Although the injury had in fact occurred on July 14, 1991, the complaint averred that Plaintiff was injured on July 16, 1991. The complaint, as plead, therefore fell within one day of the applicable three year statutes of limitations. *See* M.G.L. ch. 260, § 2A; M.G.L. ch. 106, § 2–318. In turn, Defendant's answer indicated that it was "without knowledge or information sufficient to form a belief as to the truth of [this] allegation." Plaintiff's pre-trial memorandum, filed on December 6, 1995, also asserted that his injury occurred on July 16, 1991. Defendant's pre-trial memorandum, filed December 7, 1995, did not contest this date.

Plaintiff's later court documents also assumed that the accident occurred on July 16, not July 14, 1991. For example, in his February 23, 1996, opposition to Defendant's original motion for summary judgment, Plaintiff included his responses to Defendant's interrogatories in which he stated that his injury occurred on July 16, 1991. Likewise in his February 1, 1996, motion to amend his complaint, which sought to add a claim of market share liability, Plaintiff referred to July 16, 1991, as the date of injury. Following the parties' lead, the Court's August 23, 1996, report and recommendation accepted as an undisputed fact that Plaintiff's injury occurred on July 16, 1991. District Judge Michael A. Ponsor adopted the recommendation to deny Defendant's motion for summary judgment and set a jury trial for February 24, 1997.

On February 14, 1997, Plaintiff moved to enter and view the Springfield Resource Recovery Plant. In his motion, Plaintiff, for the first time in court documents, referred to his injury as having occurred on July 14, 1991. As it happened, that same day, February 14, 1997, Plaintiff's counsel, with the approval of Defendant's counsel, contacted the clerk's office and reported that the parties had reached an oral settlement agreement. The proposed agreement involved a compromise of the statutory lien held by the worker's compensation insurer as required by M.G.L. ch. 152, § 15. Plaintiff's counsel requested a hearing before Judge Ponsor in order to obtain approval of the settlement. The clerk scheduled the hearing for the afternoon of February 24, 1997, the originally scheduled trial date.

On the morning of the scheduled hearing date, Plaintiff's counsel, after reviewing the draft release prepared by Defendant's counsel, advised Defendant's counsel that the injury occurred on July 14, 1991, not July 16, 1991. Defendant's counsel thereupon refused to sign the petition for approval of settlement, which already had been endorsed by the worker's compensation insurer. The parties appeared in court that afternoon and reported that the matter was not settled. Judge Ponsor scheduled a status conference for March 3, 1997, at which time he ordered that Plaintiff's proposed motion to enforce the settlement agreement and Defendant's proposed motion to dismiss be filed by March 21, 1997. The Court addresses these two motions in turn.

### III. *MOTION TO ENFORCE SETTLEMENT*

Plaintiff essentially makes four arguments why the parties' purported settlement should

be enforced: (1) he has an enforceable oral contract with Defendant to settle the case for a specific amount; (2) he did not actively deceive Defendant as to the date of the accident; (3) the doctrine of judicial estoppel should be employed to enforce the parties' agreement; and (4) Defendant is being contradictory regarding its knowledge of the date of injury. These arguments are addressed below after a discussion of two preliminary matters.

First, the Court notes that both parties rely on the Restatement (Second) of Contracts and draw no distinction between contracts entered into by parties themselves and those entered into by the parties' counsel. Nevertheless, from the facts presented, it is apparent that each party's attorney had actual authority to enter a binding settlement. *Compare Michaud v. Michaud,* 932 F.2d 77, 81 (1st Cir.1991), *and Milewski v. Roflan Co.,* 195 F.Supp. 68, 69 (D.Mass.1961) (denying motion to enforce settlement agreement finding attorney lacked authority to bind client). *See also Mason & Dixon Lines, Inc. v. Glover,* 975 F.2d 1298 (7th Cir.1992) (oral settlement agreement not enforced because plaintiff had notice that trustee lacked authority to settle). The Court proceeds accordingly.

■ Second, the Court queries whether the parties, through counsel, contemplated that their oral agreement would be reduced to writing. At least two documents in this vein have been called to the Court's attention: (1) the release drafted by Defendant's counsel, which was never signed by Plaintiff because of the incorrect date; and (2) the petition for approval of settlement which, as described, was not signed by Defendant's counsel when he realized that the date of the accident, which he assumed was July 16, was in fact July 14, 1991.

In the Court's opinion, the failure of the respective parties to execute either one of these documents does not void any underlying agreement. Neither party claims an intent not to have been bound absent fully executed documents. *Compare Winston v. Mediafare Entertainment Corp.,* 777 F.2d 78, 80–81 (2d Cir.1985) (parties did not enter into a binding settlement agreement). Moreover, the nature of Defendant's liability was not uncertain. *Compare Estate of Davis v. Johnson,* 745 F.2d 1066, 1075 (7th Cir.1984) (purported settlement not enforced since "defendants' liabilities remained uncertain pending the signing of the releases.") Thus, neither the release nor the petition for approval of the settlement was a condition precedent to enforcement of any oral agreement. In fact, the petition assumed that a settlement had been reached. Court approval was only required, pursuant to M.G.L. ch. 152, § 15, in order to address a third party's worker's compensation lien on Plaintiff's recovery. Although judicial disapproval of the settlement would have affected Defendant, Defendant had no significant role in the approval process.[1]

### 1.

■ Conceding that there was no written agreement, Plaintiff first claims that he has an enforceable oral contract with Defendant to settle the case for a specific amount. Defendant asserts, in response, that there was never a meeting of the minds.

■ As the parties are aware, the formation of an agreement requires a bargain in which there is a manifestation of mutual assent, i.e., a meeting of the minds to the exchange and consideration. *See* Restatement (Second) of Contracts § 17(1) cmt c. *See also Trifiro v. New York Life Ins. Co.,* 845 F.2d 30, 31 (1st Cir.1988). These elements are required whether the contractual agreement is written or oral. An oral agreement to settle a claim therefore may be enforced as any other contract. *See In re Mal de Mer Fisheries, Inc.,* 884 F.Supp. 635, 641 (D.Mass.1995); *Wang Labs., Inc. v. Ap-*

---

1. Although the language of M.G.L. ch. 152, § 15 enables a court to inquire into the "merits of the settlement," the purpose of this inquiry appears to be the fair allocation of the settlement proceeds among interested claimants, most particularly the third party insurer. Thus, the Court does not believe that Defendant could have withdrawn from the oral settlement agreement prior to the court's review, as if its settlement agreement, though counsel, was only conditional. This statutory interpretation need not be determinative, however, since, as explained below, the Court believes that the parties' agreement is otherwise voidable.

*plied Computer Sciences, Inc.*, 741 F.Supp. 992, 1001–01 (D.Mass.1990), *rev'd on other grounds,* 958 F.2d 355 (Fed.Cir.1992). *See also Fustok v. Conticommodity Services, Inc.*, 577 F.Supp. 852, 858 (S.D.N.Y.1984).

■ Even if there is a meeting of the minds, however, a contract may be voidable based on a mutual mistake. "A mistake is a belief that is not in accord with the facts." Restatement (Second) of Contracts § 151. Thus:

> Where a mistake of both parties at the time of contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake....

*Id.,* § 152(1). *See LaFleur v. C.C. Pierce Co.,* 398 Mass. 254, 496 N.E.2d 827, 830 (1986). A party bears the risk of a mistake when either

> (a) the risk is allocated to him by agreement of the parties, or
>
> (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
>
> (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

Restatement (Second) of Contracts § 154.

Here, the oral settlement agreement was based on a materially mistaken fact—that the injury occurred on July 16, 1991. Applying the Restatement to the facts before the Court, it is evident that (i) the parties' mistake relates to a basic mutual assumption (the date of the injury), (ii) the parties' agreement itself does not allocate the risk, and (iii) Defendant would not have performed otherwise.

Did Defendant, in any event, as Plaintiff impliedly argues, bear the risk of the mistake pursuant to § 154(b)? In this regard, in its answer to Plaintiff's complaint, Defendant not only claimed to be without knowledge of the date of injury, but raised the statute of limitations as an *affirmative* defense. Defendant then had more than sufficient time,

through the process of discovery, to determine the actual date of injury. Given that Plaintiff's complaint, on its face, was filed within one day of the expiration of the statute of limitations, Defendant should have been particularly vigilant for any discrepancy regarding this date. In fact, when Plaintiff's counsel brought the inaccuracy to the attention of Defendant's counsel—when discussing the draft release—Defendant's counsel immediately understood its import.

Moreover, in July of 1995, as Plaintiff points out, Defendant's counsel forwarded to Plaintiff's counsel copies of the records of Plaintiff's employer which had been obtained by Defendant in response to its deposition notice. These records described Plaintiff's injury as having occurred on July 14, 1991, not the July 16, 1991, date set forth in Plaintiff's complaint. In addition, on August 8, 1995, Defendant conducted Plaintiff's deposition, during which he stated that the injury occurred on July 14, 1991. Defendant also questioned Plaintiff about his time sheet, which again noted the injury as having occurred on July 14, 1991. In sum, the problem of the correct date was obviously brewing for some time. *Compare Dover Pool & Racquet Club, Inc. v. Brooking,* 366 Mass. 629, 322 N.E.2d 168 (1975) (contract voidable by property purchaser when, unknown to either purchaser or seller, zoning by-law adversely effecting property was passed days before land contract was signed). Why, in light of these developments, Defendant's counsel failed to recognize the contradiction remains something of a mystery.

Nonetheless, in the Court's view, Defendant did not bear the risk of the mistake alone or in isolation. While Defendant bore the burden of *pleading* the statute of limitations as an affirmative defense, *see* Fed. R.Civ.P. 8(c), *Badway v. United States,* 367 F.2d 22, 25 (1st Cir.1966), he did not necessarily bear the burden of *proof* as well.

■ The burden of pleading "operates independently of the burden of proof, which, in diversity cases, is governed by state law." 5 *Charles A. Wright & Arthur R. Miller* § 1272, at 450. In Massachusetts, the burden of proof regarding the statute of limita-

tions rests with the plaintiff. *Newburgh v. Florsheim Shoe Co.*, 200 F.Supp. 599, 604 (D.Mass.1961) (citing *Breen v. Burns*, 280 Mass. 222, 182 N.E. 294 (1932); *Mendes v. Roche*, 317 Mass. 321, 58 N.E.2d 148 (1944); and *Smith v. Pasqualetto*, 146 F.Supp. 680 (D.Mass.1956), *vacated on other grounds*, 246 F.2d 765 (1st Cir.1957)). Granted, cases discussing such burdens usually arise when the defense is interposed to a complaint known by the defendant to have been pled after the statute of limitations had run. *See, e.g., Sleeper v. Kidder, Peabody & Co.*, 480 F.Supp. 1264, 1265 (D.Mass.1979), *aff'd without op.*, 627 F.2d 1088 (1st Cir.1980). Nevertheless, when the statutory time limit has lapsed in fact, a plaintiff clearly has the burden to explain the delay and seek some relief. *See Franklin v. Albert*, 381 Mass. 611, 411 N.E.2d 458, 463 (1980). *Cf. Truck Drivers & Helpers Union, Local No. 170 v. Nat'l Labor Relations Bd.*, 993 F.2d 990, 998 (1st Cir.1993.) It is just that form of relief which Plaintiff now seeks in response to Defendant's motion for summary judgment. *See* discussion, *infra.*

At bottom, Plaintiff had as much, if not more, of a burden regarding the accuracy of the date of injury. As described, however, Plaintiff repeatedly confirmed that July 16, 1991 was the date of injury, even in the face of the same contradictory information available to Defendant. Plaintiff never filed a motion to amend his complaint in order to correct the date. When, for other reasons, Plaintiff did file a motion to amend on January 31, 1996—a motion which was disallowed by this Court—the proposed complaint reasserted that the injury occurred on July 16, 1991. In fact, Plaintiff's motion to amend was filed *after* Plaintiff's deposition—at which time the July 14, 1991 date was mentioned—and *after* production of other documents which cited the correct date. Finally, as described, still other court documents of Plaintiff's, as well as his answers to interrogatories, repeatedly asserted that the injury occurred on July 16, 1991.

The commentators to the Restatement (Second) of Contracts specifically recognize that the standards with respect to contractual mistakes confer "considerable discretion on the court" and "have traditionally been marked by flexibility." *Id.*, ch. 6 introductory note. "In part, this has been due," the comment continues,

> to the protean character of the situations involved and the circumstance that they are almost inevitably unforeseen by the parties. In part it has been due to the fact that the law of mistake was shaped largely by courts of equity which had broad discretionary powers. This characteristic of flexibility marks the rule stated in this Chapter, as is evidenced by such imprecise language as "materially" (§ 152), "unconscionable" (§ 153) and "bears the risk" (§§ 152, 153, 154).

*Id.* Here, given the essential equitable nature of the relief sought, the Court believes that Defendant did not bear the risk of mistake alone, if at all. Similarly, given the parties' mutual roles in fostering the mistake, the Court does not believe it reasonable to judicially allocate the risk solely to Defendant. *Contrast Covich v. Chambers*, 8 Mass. App.Ct. 740, 397 N.E.2d 1115 (1979) (plaintiff's mistake was entirely unilateral). Accordingly, even assuming there was a meeting of the minds, the Court finds that any settlement agreement entered into by the parties was voidable by Defendant in light of the principles stated above. Plaintiff's first argument fails.

### 2.

■ Plaintiff's avowed lack of deception, his second argument, does not alter the Court's conclusion. Either Plaintiff's counsel, throughout the course of this litigation, was as mistaken as Defendant's counsel regarding the accident date—thereby making the settlement agreement voidable as a mutual mistake—or he became aware of the mistake sometime prior to reaching settlement, the timing of which would raise uncomfortable issues of deception. Indeed, given the tight statutory time period within which the complaint was filed, Plaintiff's counsel was no doubt aware of the import of an accident date earlier than July 16, 1991, had that come to his attention. Nonetheless, the factual discrepancies described above failed to trigger any action on Plaintiff's counsel's part until the eleventh hour, just prior to the

expected execution of the release and the petition for approval of settlement. In stark contrast, Plaintiff himself—in light of his deposition testimony—appears to have understood all along that July 14 was the operative date.

The question of deception aside, if Plaintiff's counsel—with whom Defendant's counsel made the settlement agreement—came to know the correct date prior to settlement, the agreement would nonetheless be voidable under the unilateral mistake doctrine. According to the Restatement:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake ... and
>
> (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
>
> (b) the other party had reason to know of the mistake or his fault caused the mistake.

Restatement (Second) of Contracts § 153. Here, since Plaintiff, in the person of his counsel, still "had reason to know of the mistake," Defendant is entitled to void the agreement. *See Torrao v. Cox,* 26 Mass.App. Ct. 247, 525 N.E.2d 1349, 1352 (1988) (reformation of instrument is warranted not only by fraud or mutual mistake, but by a mistake of one party known to the other party). Of course, the Court would be faced with a significantly different scenario had Plaintiff *and* Plaintiff's counsel consistently revealed the correct date throughout the course of litigation.

### 3.

■■ As his third argument, Plaintiff attempts to invoke the doctrine of judicial estoppel as a way to enforce the parties' agreement. Judicial estoppel "essentially preclude[s] a party from asserting a legal or factual position 'inconsistent' with its position in a prior proceeding." *Gens v. Resolution Trust Corp.,* 112 F.3d 569, 572 (1st Cir.), *petition for cert. filed* (July 17, 1997) (quoting *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (1st Cir. 1987)). The basic purpose of the doctrine, as applied in this circuit, is to prevent a party from "playing fast and loose with the courts." *Patriot Cinemas,* 834 F.2d at 212. Plaintiff contends that judicial estoppel applies because he reported to the court clerk that the case was settled and the matter was thereafter removed from the trial list. Courts would be greatly hampered, Plaintiff argues, if they could not rely on the representations of parties.

■ Unfortunately for Plaintiff, his counsel's argument is unavailing. Even assuming application of the doctrine of judicial estoppel in the context of the same, not a succeeding,[2] lawsuit, the doctrine operates only in certain narrow circumstances to protect the integrity of the judicial process. *United States v. Levasseur,* 846 F.2d 786, 792 (1st Cir.1988). *See also United States v. Owens,* 933 F.Supp. 76, 81–82 (D.Mass.1996). Plaintiff relies most prominently on the state appeals court decision in *Correia v. DeSimone,* 34 Mass. App.Ct. 601, 614 N.E.2d 1014 (1993). In *Correia,* after impanelment of a jury, the parties announced in open court that they had reached a settlement. Although opening arguments had not begun, the Court dismissed the witnesses, excused the jury and cancelled the first day of trial. Given these circumstances, the appellate court determined that the doctrine of judicial estoppel had sufficient vitality to warrant its application by the trial court and to mandate enforcement of the settlement agreement. *Id.* 614 N.E.2d at 1016.[3]

---

**2.** For a discussion of the application of judicial estoppel in the context of a single suit, see Judge William G. Young's opinion in *Wang Labs,* 741 F.Supp. at 996 n. 4, *rev'd on other grounds,* 958 F.2d 355.

**3.** Acknowledging the appellate court decision in *Correia,* the Supreme Judicial Court, in *East Cambridge Sav. Bank v. Wheeler,* 422 Mass. 621, 664 N.E.2d 446, 448 (1996), also recognized judicial estoppel "at least where the party to be estopped had been successful in its first assertion of its inconsistent position." However, the court went on to state the following:

> We decline to identify a settlement [in a prior bankruptcy court proceeding] as representing success for the purposes of judicial estoppel.

Plaintiff's arguments to the contrary, *Correia* is not "significantly identical to the essential facts" of this case. (Pl.'s Br. (Docket No. 49) at 8.)[4] In *Correia*, the parties set out their settlement in open court and the court then acted. Here, at most, the parties, through Plaintiff's counsel, notified the clerk's office of settlement and requested that the scheduled trial date—on which there was a second trial scheduled as well—be used instead to seek judicial approval of the settlement. Although not determinative, that request itself bespeaks a lack of finality, at least as far as the Court was concerned. Moreover, this Court is not inclined to equate a telephone call to the clerk's office, as happened here, with representations of settlement made in open court, as happened in *Correia*. Compare, e.g., *Wang Labs, Inc.*, 958 F.2d at 359 (refusing to employ judicial estoppel where, "[b]y informing the clerk's office that it intended to settle the litigation, [defendant] was not playing 'fast and loose' with the courts"), *with Ostman v. St. John's Episcopal Hosp.*, 918 F.Supp. 635, 638–39 (E.D.N.Y.1996) (stipulation of settlement on the record in open court confirmed), *and In re Mal de Mer Fisheries*, 884 F.Supp. at 637 (case reported settled in court conference and thus continued for three months).

In any case, Judge Ponsor never approved the settlement. Rather, he gave the parties additional time to work out the problem; barring agreement, they were to prepare for trial. As a result, there was no real disruption of the judicial process. Simply put, the court does not appear to have been inconvenienced by the last-minute activities of the parties. No jury had been impanelled, no witness dismissed, and no trial begun. Even had a settlement order issued, Judge Ponsor still had the power to vacate the order to consider whether there was excusable neglect by counsel in failing to inform the court of settlement problems. *See Pratt v. Philbrook*, 109 F.3d 18 (1st Cir.1997).

4.

Plaintiff's final argument—that Defendant is being contradictory regarding its knowledge of the date of injury—is similarly ineffective. Clearly, "intentional self-contradiction" should not be "used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Patriot Cinemas*, 834 F.2d at 212. *Accord Scarano v. Central R. Co. of N.J.*, 203 F.2d 510 (3d Cir.1953). If such a tactic were attempted, a court would be justified in acting to deny the unfair advantage. *Id.* When a litigant is "playing fast and loose with the courts," that party will be precluded from asserting a position inconsistent with a position he or she took in an earlier proceeding. *Id.*

In the present matter, there is no evidence that Defendant, although mistaken, was being contradictory. Nor is there any evidence that Defendant has gained any unfair advantage through its mistake. Even Defendant's concession, for purposes of its original motion for summary judgment, that the accident occurred on July 16, 1991, provided no benefit as that motion was denied.

In sum, the Court finds that (i) the parties were mutually mistaken regarding the date of injury, a mistake seriously compounded by Plaintiff's actions, (ii) judicial estoppel does not apply and (iii) Plaintiff's remaining arguments are without merit. Accordingly, and despite the potentially dire consequences for Plaintiff, *see* discussion *infra*, the Court will recommend that Plaintiff's motion to enforce the settlement agreement be denied. Plain-

In deciding whether a party should be judicially estopped, we will look to see whether that party is seeking to use the judicial process in an inconsistent way that courts should not tolerate.

*Id.* 664 N.E.2d at 448. *See also Fay v. Federal Nat'l Mortg. Assn*, 419 Mass. 782, 647 N.E.2d 422 (1995).

4. Indeed, it is unclear whether this Court should even be looking at state law for the application of judicial estoppel. As the district court stated in *Wang Labs*, "[w]hile the majority of circuits that have considered the question have held that state law controls the application of judicial estoppel in diversity cases, those cases involved situations where the federal court was considering whether to judicially estop a party from contradicting a position it had previously taken in a state court proceeding." *Id.*, 741 F.Supp. at 997 (citing cases). Here, by contrast, as in *Wang Labs*, "protection of the integrity of the state courts is simply not at issue." *Id.* Even the Federal Circuit in *Wang Labs* applied First Circuit common law on judicial estoppel without even a nod to Massachusetts decisions.

tiff has pointed to no other doctrine to cause the court to advise otherwise.

## IV. MOTION FOR SUMMARY JUDGMENT

In its motion for summary judgment, Defendant contends that Plaintiff filed his complaint after the statute of limitations had run and that his case must thus fail by operation of law. There is, in fact, no dispute that Plaintiff was injured on July 14, 1991, and that the complaint was filed on July 15, 1994, one day late. In response, relying on the discovery rule, Plaintiff claims that he filed his complaint well within the statutory period.

Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). A disputed fact is genuinely at issue if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 352 (1st Cir.1992) (citation and internal quotation marks omitted). "A fact is material if it 'carries with it the potential to affect the outcome of the suit under applicable law.'" *One Nat'l Bank v. Antonellis*, 80 F.3d 606, 608 (1st Cir.1996) (quoting *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993)). Once the moving party has demonstrated that no genuine issue of material fact exists, the burden shifts to the non-moving party to point "to specific facts demonstrating that there is, indeed, a trialworthy issue." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995). The facts, and all reasonable inferences that may be drawn from them, must be viewed in a light most favorable to the non-moving party. *See Guzman–Rivera v. Rivera–Cruz*, 29 F.3d 3, 4 (1st Cir.1994). Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 223 (1st Cir.1992).

Under Massachusetts law, tort actions may be brought "only within three years ... after the cause of action accrues."

M.G.L. ch. 260, § 2A. *See also* M.G.L. ch. 106, § 2–318 (breach of warranty claims must be brought within three years after date of injury and damage occurs). "The determination of when a cause of action 'accrues' has generally been left to the courts by the Legislature." *Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc.*, 396 Mass. 818, 489 N.E.2d 172, 176 (1986). *See also Cambridge Plating Co. v. Napco, Inc.*, 991 F.2d 21, 25 (1st Cir.1993) ("determining when claims accrue has long been the product of judicial interpretation") (citations and internal quotation marks omitted). In making this determination, courts have been guided by the basic principle that "a cause of action accrues on the happening of an event likely to put the plaintiff on notice." *Anthony's Pier Four*, 489 N.E.2d at 176 (citations and internal quotation marks omitted). Massachusetts caselaw establishes that the general rule for negligence claims is that the cause of action accrues at the time of injury. *Cambridge Plating Co.*, 991 F.2d at 25 (citing *Riley v. Presnell*, 409 Mass. 239, 565 N.E.2d 780 (1991)).

As the Supreme Court has explained, "[s]tatutes of limitations, which are found and approved in all systems of enlightened jurisprudence, represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979) (citations and internal quotation marks omitted). This standard applies whether the statutory period has been missed by one year or one day.

Plaintiff—looking for any additional time period of more than one day—contends that Defendant's motion for summary judgment must fail because the "discovery rule" applies to this case. Under the rule, "the action accrues when the injured party knew, or, in the exercise of reasonable diligence, should have known, the factual basis for the cause of action." *Tagliente v. Himmer*, 949 F.2d 1, 4 (1st Cir.1991). The rule is a judicially created tool to ensure fairness by allowing a plain-

tiff to be put on notice that he has a claim. *Cambridge Plating Co.*, 991 F.2d at 25. The principle underlying the discovery rule is that "a plaintiff should be put on notice before his claim is barred." *Anthony's Pier Four*, 489 N.E.2d at 176 (quoting *Franklin v. Albert*, 381 Mass. 611, 411 N.E.2d 458, 463 (1980)).

 Typically, "when a person with ordinary wisdom and judgment would be able to know that the conduct or product of another may have harmed him or her, the statutory limitations period has begun to run." *Riley*, 565 N.E.2d at 789 (O'Connor, J., dissenting). *See also Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 557 N.E.2d 739, 741 (1990) ("the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury"). As discussed, a plaintiff bears the burden of presenting facts sufficient to take the case outside the statute of limitations. *Franklin*, 411 N.E.2d at 463. Moreover, the discovery rule applies only in certain hard-to-discern claims, *e.g.*, where a defendant hinders the plaintiff's discovery of the cause of the injury. *Cambridge Plating*, 991 F.2d at 24.

Plaintiff claims that his cause of action did not accrue until he discovered, or reasonably should have discovered, that he was injured because of Defendant's conduct, regardless of the actual date of injury. Plaintiff thus acknowledges that he was injured on July 14, 1991, but claims he was unable to determine the cause of injury because he immediately went to the hospital, where he remained for fifteen days. Specifically, Plaintiff avows that "[o]n the date of my injury, I knew I was burned by scalding liquid, but I was not aware that the design of the hopper door was in any way the cause of my injuries." Plaintiff claims not to have known that the design of the hopper door was in any way involved until his return to work in September of 1991. As Plaintiff's counsel asserted at oral argument, the statute of limitations, therefore, did not begin to run until at least September of 1991. Citing *Lareau v. Page*, 39 F.3d 384 (1st Cir.1994), and *Fidler v. E.M. Parker Co.*, 394 Mass. 534, 476 N.E.2d 595

(1985), Plaintiff claims that Massachusetts courts—to whom this Court must look—apply the discovery rule in both negligence and products liability actions.

The discovery rule is easier to apply in some situations than others. In medical malpractice cases, for example, Massachusetts courts have come to acknowledge that a cause of action does not accrue "until a patient learns, or reasonably should have learned, that he has been harmed as a result of a defendant's conduct." *Franklin*, 411 N.E.2d at 459–60. Other relatively obvious circumstances call for this same result. *See Hendrickson v. Sears*, 365 Mass. 83, 310 N.E.2d 131 (1974) (client's cause of action against an attorney for negligent certification of title to real estate does not accrue until the misrepresentation is discovered or should reasonably have been discovered); *Friedman v. Jablonski*, 371 Mass. 482, 358 N.E.2d 994 (1976) (real estate fraud); *Olsen v. Bell Telephone Labs., Inc.*, 388 Mass. 171, 445 N.E.2d 609 (1983) (products liability claims arising in the context of an occupational disease resulting from negligence). The reasoning behind these cases is clear; an individual ought not be barred from seeking redress until at least some time has passed once he becomes aware that he has in fact been harmed.

 Given the particulars of the present matter, however, Plaintiff's reliance on the discovery rule is unavailing. The consistent theme in cases applying the rule has been the delayed discovery of the harm itself. As the First Circuit recently noted, "[u]nder the Massachusetts discovery rule, the running of the statute of limitations is delayed while the facts, as distinguished from the legal theory for the cause of action, remain *inherently unknowable* to the injured party." *The Saenger Organization, Inc. v. Nationwide Insurance Licensing Assoc., Inc.*, 119 F.3d 55, 65 (1st Cir.1997) (emphasis in original) (citations and internal quotation marks omitted). It is the inherent unknowability of the breach which gives the discovery rule its life. "The 'notice' envisioned under the discovery rule arises on acquisition of the requisite 'knowledge that an injury has occurred.'" *Catrone v. Thoroughbred Racing Ass'n of N.Am., Inc.*, 929 F.2d 881, 886 (1st Cir.1991)

(quoting *White v. Peabody Const. Co.*, 386 Mass. 121, 434 N.E.2d 1015, 1021 (1982)).

In *Anthony's Pier Four*, for example, an action claiming negligence and breach of implied and express warranties, the Supreme Judicial Court held that the statute of limitations did not accrue until the mooring system, specifically designed for plaintiff by the defendant, failed. *Id.*, 489 N.E.2d at 174. While there are product design aspects at play in the present matter as well, the date of Plaintiff's injury is really no different than the date of breach in *Anthony's Pier Four* when the plaintiff's boat capsized as a result of defendant's poorly designed mooring. Such dates of accrual start the clock ticking—requiring an injured party to investigate the probable cause of damage. *See also Kubrick*, 444 U.S. at 124, 100 S.Ct. at 360 ("the putative malpractice plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make"); *Albert v. Maine Cent. R. Co.*, 905 F.2d 541, 544 (1st Cir.1990) (once the plaintiff concluded he had a hearing loss and believed that the injury was caused by his employment, "he had a duty to investigate the situation in order to confirm or deny his belief").

Nevertheless, Plaintiff maintains that the statute of limitations was suspended until he realized, sometime in September of 1991, that Defendant's design or manufacture of the hopper doors was the probable cause of his injury. Granted, there is some linkage in the caselaw concerning the discovery rule between a claimant's awareness of his injury and its probable cause. Upon close examination, however, this linkage arises only in those cases when the injury itself is difficult to discover.

Commenting on this very issue, the First Circuit in *Albert*—noting that the Supreme Court in *Kubrick* "did not specifically address the issue of whether a plaintiff needed to know of the injury's cause for the purpose of determining accrual"—adopted the reasoning of other courts that the statute of limitations began to run when plaintiff "knew, or should have known, of their [his] hearing loss *and* its cause." *Albert*, 905 F.2d at 544. But *Albert*, and the cases it relied on, clearly concerned a disease process, the discovery of which and its causes pose particular problems not present when the injury is sudden, obvious and known. Indeed, as the Supreme Court noted in *Kubrick*, that a plaintiff "has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain." *Id.* at 122, 100 S.Ct. at 359.

Here, however, Plaintiff does not claim that his injury manifested itself on any date other than July 14, 1991. Moreover, the facts regarding Plaintiff's injury were readily available to him. In these circumstances, the Court is convinced that Plaintiff should not be allowed to toll the statute of limitations until he knew who actually designed or manufactured the hopper door. In addition, there is no evidence that Defendant has hindered Plaintiff's discovery of the cause of action.

The Court recognizes the unfairness of a rule which holds that a statute of limitations has run even before a plaintiff knows or reasonably should have known that he may have been harmed by the conduct of another. *Bowen*, 557 N.E.2d at 740–41. Indeed, a common thread in all of the cases cited by Plaintiff is that the discovery occurred *after* the statute of limitations had run, *see, e.g., Cambridge Plating Co., Inc.*, 991 F.2d 21; *Franklin*, 411 N.E.2d 458; *Anthony's Pier Four, Inc.*, 489 N.E.2d 172; *Bowen*, 557 N.E.2d 739; *Kubrick*, 444 U.S. 111, 100 S.Ct. 352; *Riley*, 565 N.E.2d 780, thereby necessitating application of the discovery rule. Here, in contrast, Plaintiff simply claims that the statute of limitations should begin to run a matter of months after the injury when he realized that Defendant designed or manufactured the hopper door—a discovery arising well within the statutory three-year period.

The important point is that a statute of limitations starts to run when an event has occurred which was reasonably likely to put a plaintiff on notice that someone may have caused his injury. *Bowen*, 557 N.E.2d at 741. *See also Riley*, 565 N.E.2d at 789 ("when a person with ordinary wisdom and

judgment would be able to know that the conduct or product of another may have harmed him or her, the statutory limitations period has begun to run"). As the court in *Bowen* described, a plaintiff must "have (1) knowledge or sufficient notice that he was harmed and (2) knowledge or sufficient notice of what the cause of harm was." *Id.*, 557 N.E.2d at 742. Here, Plaintiff had more than sufficient notice of both. The root of Plaintiff's problem, after all, is not the date of discovery, but his counsel's mistaken belief that the injury occurred on July 16, 1991, causing him to ensure that the complaint was filed by that date. Unfortunately, the date of filing, July 15, 1994, was one day late.

The statute of limitations began to run on July 14, 1991. Since Plaintiff's complaint was filed more than three years after that date, Defendant is entitled to summary judgment.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiff's motion for enforcement of settlement be DENIED and that Defendant's motion for summary judgment be ALLOWED.[5]

5. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of

Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia-Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.