# United States Court of Appeals

## For the First Circuit

No. 12-2480

PAUL ENOS,
Chairman of the Rhode Island Bricklayers Benefit Funds,

Plaintiff, Appellee,

v.

UNION STONE, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before
Lynch, Chief Judge,
Torruella, Circuit Judge,
and Stearns,[*] District Judge.

Andrew J. Tine with whom Law Offices of Andrew J. Tine was on brief for appellant.
Karl J. Gross with whom O'Reilly, Grosso & Gross, P.C. was on brief for appellee.

October 15, 2013

---

[*]Of the District of Massachusetts, sitting by designation.

**STEARNS, District Judge.**  This is an appeal of a final judgment awarding the Rhode Island Bricklayers Benefit Funds ("the Funds" or "the Rhode Island Funds") fringe benefit contributions that Union Stone, Inc. failed to make for work performed in Massachusetts and Connecticut by members of the International Union of Bricklayers and Allied Craftworkers Local #1 Rhode Island ("the Union" or "the Rhode Island Bricklayers Union").  Finding no merit in Union Stone's arguments on appeal, we affirm.

## I.  Background

Union Stone is a party to a collective bargaining agreement ("CBA") with the Rhode Island Bricklayers Union.  Under the terms of the CBA, Union Stone is required to make benefit contributions to the Union members' pension funds.  When Union Stone employs member bricklayers on out-of-state jobs, typically in Massachusetts and Connecticut, it is obligated to make the benefit payments to affiliate pension funds in those states.  The affiliate funds then transfer the payments to the Rhode Island Funds for the members' account.  Union Stone is also obligated by the CBA to maintain books and records substantiating the payments.

Paul Enos, the Chairman of the Trustees of the Rhode Island Funds, sued Union Stone in the Rhode Island District Court pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, and the Labor Management Relations Act, id. § 185, alleging that Union Stone had failed to pay the

full amount due for work performed by Union members in Massachusetts and Connecticut. The district court entered partial summary judgment for the Funds, awarding the contributions that were agreed to be owing for members' labor in Massachusetts. Because there were disputes about the amount owed for work performed in Connecticut, the court set a bench trial for June 7, 2012.

On the morning of trial, Union Stone's counsel presented the Funds' attorney with copies of checks made out to the Connecticut funds in an amount that ostensibly covered the outstanding contributions owed to the Union's Rhode Island members. Union Stone did not, however, provide copies of the remittance reports, which would have allowed the Funds to compare the amounts tendered with the contributions being sought. Perhaps naively, the attorney for the Funds informed the court that the checks "resolve[d] that . . . portion of the judgment [the Funds] were seeking as to the Connecticut funds," thus obviating the need for a trial. Only afterwards did the Funds realize that the bulk of the payments to the Connecticut funds were in satisfaction of contributions owed by Union Stone to Connecticut bricklayers, and not to the Union's Rhode Island members.

Believing that he had been deliberately misled, Enos repaired to the district court, alleging that Union Stone's "misrepresent[ation]" of the nature of its payment to the

Connecticut funds was "nothing more than a ruse against the Court." Union Stone responded with a Rule 11 motion denying the accusation and seeking sanctions. Chief Judge Lisi determined that the June 7 morning-of-trial exchange between counsel had resulted in a "miscommunication" and denied the Rule 11 motion as "ill-conceived."

The court then scheduled a second bench trial to resolve the dispute over the amounts owed by Union Stone for labor performed by Rhode Island bricklayers in Connecticut. Following the trial, the court entered judgment in favor of the Funds, awarding the unpaid contributions, interest, and attorneys' fees. Union Stone then brought this appeal.

## II. Discussion

Union Stone argues that the district court erred in: (i) refusing to enforce the June 7 exchange as an oral settlement agreement between the parties; (ii) admitting evidence that was not properly disclosed under Rule 26; (iii) declining to impose Rule 11 sanctions; and (iv) awarding interest and attorneys' fees.

## A. Settlement Agreement

Union Stone points first to counsel's statement on the record that the payments to the Connecticut funds "resolve[d] [the remainder of] the judgment [sought]" as evidence that a settlement agreement had been reached, and argues that the district court erred in not enforcing it by dismissing the case. We disagree.

A settlement agreement is a species of contract. NBA Props., Inc. v. Gold, 895 F.2d 30, 33 (1st Cir. 1990). This court reviews for clear error a trial court's determination of whether an enforceable contract has been formed. See Adelson v. Hananel, 652 F.3d 75, 85 (1st Cir. 2011). Where, as here, the underlying action is brought pursuant to a federal statute, whether a settlement agreement is enforceable is a question of federal law. See Quint v. A.E. Staley Mfg. Co., 246 F.3d 11, 14 (1st Cir. 2001). The load-bearing element of a contract is the mutual assent of the parties to the essential terms of the agreement, the so-called "meeting of the minds." See ITT Corp. v. LTX Corp., 926 F.2d 1258, 1260 n.1, 1265 n.7 (1st Cir. 1991). Under First Circuit law, as elsewhere, where there is no meeting of the minds between the parties because of a mistake of fact, no contract is formed, and the imperfect agreement is voidable at the election of the party adversely affected. 13 S. Williston, Contracts § 1535 (1970). Moreover, "[a] mistake by one party with knowledge thereof by the other is equivalent to a mutual mistake; a party should not be benefitted by a mistake he knew the other had made." Hashway v. Ciba-Geigy Corp., 755 F.2d 209, 211 (1st Cir. 1985); see also O'Rourke v. Jason Inc., 978 F. Supp. 41, 48 (D. Mass. 1997) (applying the doctrine of unilateral mistake to a settlement agreement).

The district court specifically found the June 7 exchange between counsel regarding the Connecticut payments to have engendered a "miscommunication," that is, a mistaken understanding on the part of the lawyer for the Funds. This finding is not clearly erroneous. It is evident from the record that the Funds' attorney erroneously assumed that the Union Stone checks he had been given represented the payment of the sums owed to the Rhode Island bricklayers for their work in Connecticut. There is no hint whatsoever in the record that the Funds were willing to accept, in settlement of that obligation, the payment of an altogether different debt. It was explicit from the history of the litigation — specifically from the entry of partial summary judgment resolving the claim for contributions for labor performed by Union members in Massachusetts — that the Funds expected an additional payment for work done by the Rhode Island bricklayers in Connecticut. There was no error in the district court's refusal to enforce the purported June 7 settlement agreement.

B. <u>Evidentiary Rulings</u>

In the district court proceedings, Union Stone unsuccessfully objected to the admission of certain evidence on the ground that it was tainted by violations of the discovery rules. On appeal, Union Stone contends that these violations were sufficiently egregious to compel vacating the judgment. We disagree.

We review evidentiary rulings for abuse of discretion. United States v. Tetioukhine, 725 F.3d 1, 6 (1st Cir. 2013). Union Stone complains that the Funds failed to comply with Fed. R. Civ. P. 26 in that: (i) "new" evidence was not timely disclosed before the originally scheduled trial; (ii) affidavits reporting the results of an "expert" audit determining the amount of Union Stone's outstanding obligations were not timely produced; and (iii) the identities of the "expert" witnesses who analyzed the audit were never specifically revealed.

On our review of the record, we find nothing that rises to a violation of Rule 26: (i) the evidence identified by Union Stone as "new" was either admitted to by Union Stone in prior proceedings or originated from Union Stone itself; (ii) the allegedly "expert" audit was nothing more than an arithmetic calculation of Union Stone's outstanding Connecticut payments; and (iii) the Union's financial witnesses (Enos and Charles Raso, the Assistant Administrator of the Funds) did not testify as "experts," but simply explained from personal knowledge how the math had been done. As the district court noted, resolution of the case required nothing more complicated than "review[ing] . . . Union Stone payroll records, identifying who the workers were, . . . [a]nd . . . apply[ing] the mathematical formula that is set forth in the CBA[]." The district court's evidentiary rulings do not warrant vacating the judgment.

-7-

C.  Sanctions

Union Stone next argues that the district court erred in denying its motion for Rule 11 sanctions.  We disagree.

We review for abuse of discretion a district court's disposition of a Rule 11 motion.  CQ Int'l Co., Inc. v. Rochem Int'l, Inc., USA, 659 F.3d 53, 59 (1st Cir. 2011).  While this standard always entails "considerable latitude," Lichtenstein v. Consol. Servs. Grp., Inc., 173 F.3d 17, 22 (1st Cir. 1999), a district court's decision to deny rather than to impose sanctions "is accorded extraordinary deference," id. (internal quotation marks omitted).

"[Federal] Rule [of Civil Procedure] 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990); see also Fed. R. Civ. P. 11(b).  Here, the genesis of Union Stone's Rule 11 motion is relevant.  In litigating the eventual award of attorneys' fees, Union Stone moved to strike one of the Funds' affidavits.  In their opposition to the motion to strike, the Funds asserted that by representing to counsel and to the court that the checks paid to the Connecticut funds were in satisfaction of "the obligations sought by the Plaintiffs in this action," Union Stone had made "a material misrepresentation in an

-8-

effort to avoid pending trial which Plaintiff was prepared to proceed on that day." It was to the accusation of a deliberate misrepresentation that Union Stone's counsel took umbrage, prompting the Rule 11 motion and the counter-accusation that the Funds' counsel "was simply motivated to undo [the] settlement reported to the Court on June 7, 2012."

The record of the aborted June 7 trial is ambiguous and more suggestive — as the district court found — of a miscommunication between counsel than of a deliberate attempt by Union Stone's counsel to mislead the court. But we cannot fault the Funds for an "improper motive" in vigorously pursuing what they rightly believed their members were due. Under the circumstances, the district court clearly acted within its discretion in deeming Union Stone's Rule 11 motion "ill-conceived."

D. <u>Interest and Attorneys' Fees</u>

Union Stone finally argues that the district court erred in awarding the Funds interest and attorneys' fees. We disagree.

With respect to interest, "[i]n ERISA cases the district court may grant prejudgment interest in its discretion to prevailing fiduciaries, beneficiaries, or plan participants. This judicial discretion encompasses . . . the . . . rate to be used in calculating interest." <u>Cottrill</u> v. <u>Sparrow, Johnson & Ursillo, Inc.</u>, 100 F.3d 220, 223 (1st Cir. 1996), <u>abrogated on other grounds by</u> <u>Hardt</u> v. <u>Reliance Standard Life Ins. Co.</u>, 560 U.S. 242 (2010).

This court reviews a district court's taxing of prejudgment interest "only for abuse of discretion." Janeiro v. Urological Surgery Prof'l Ass'n, 457 F.3d 130, 145 (1st Cir. 2006). While Union Stone complains that the district court did not explain how it arrived at the amount of interest awarded, it is apparent from the record that the amount was extrapolated from the rate stipulated in the CBA and recommended by the Funds. The district court did not abuse its broad discretion by selecting an interest rate set out in the parties' own agreement.

With respect to attorneys' fees, Union Stone suggests that the district court failed to recognize that the decision to award them was discretionary. The suggestion is misguided. ERISA provides for a mandatory award of attorneys' fees against an employer who defaults on making benefit fund contributions. 29 U.S.C. § 1132(g)(2)(D) ("In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees . . . ." (emphasis added)). In addition, the CBA itself stipulates that defaulting employers will pay all attorneys' fees involved in the Funds' efforts to collect any deficiency. The district court did not err in awarding fees.[1]

---

[1] Union Stone's alternative argument — that it should not be liable for "self-incurred" fees arising after the Funds repudiated the June 7 settlement agreement — does not survive the district

## III.  <u>Conclusion</u>

For the foregoing reasons, the judgment is <u>affirmed</u>.

---

court's determination that the June 7 exchange did not give rise to an enforceable agreement between the parties.